———•-o-•———

## Joseph Achey and Another v. William Hull.

Where action was brought in justices' court; under the statute giving treble damages for trespass on lands and cutting and carrying off timber, &c., and the declaration referred to the chapter of the statute by the wrong number, but otherwise cited it correctly, and it was not demurred to, *Held* sufficient to support a verdict for plaintiff.

The said statute was not framed to protect mere possessory rights, but to give the owner of the fee the right to sue, under the form of trespass, for injuries to his inheritance. And it is, therefore, not a defense to the action that defendant had disseized the plaintiff, though it may prevent treble damages.

Where the proof given in such action, without objection, only shows plaintiff to own one undivided half of the premises, but no plea in abatement has been interposed, the non-joinder of the other owner as plaintiff only goes to apportion the damages. And in error, where it is not claimed or objected that entire damages were assessed, the court will not 'presume that they were not apportioned.

When such action is brought for cutting down timber, the plaintiff is entitled to recover as damages the amount by which the value of the estate is diminished by its destruction, and not merely the value of the trees.

Where an objection was taken on the trial to the recovery of certain damages, on the ground solely that they were not allowed by the statute, and the objection correctly overruled, the court on error will not reverse the judgment on the ground that the declaration was too general to include such damages.

*Heard November 3d and 4th. Decided November 30th.*

Error to Wayne circuit.

Hull brought action in justices' court against Joseph Achey and William Lapplar, and declared in trespass as follows:

"The plaintiff complains of the defendants of a plea of trespass, for that [the defendants, on the first day of December, A. D. 1856, and on divers other days and times between that day and the commencement of this suit, with force and arms, and contrary to the provisions of chapter 3, of title 111, of the Revised Statutes of this state, entitled " Of Trespasses on Lands," did cut down and carry off, without leave of the said plaintiff, fifty oak, and fifty ash, and fifty elm, and fifty other trees, of great value, to wit: of the value of one hundred dollars, then and there standing on the land of the plaintiff, to wit: known as the Conolly farm, in the town of Ecorse, county of Wayne, and state of Michigan, being private claim number fifty, patented to John Conolly; whereby the defendants have forfeited three times the amount of the plaintiff's damage, to the plaintiff's damage one hundred dollars."

The defendants pleaded the general issue, with notice that the title to lands would come in question, and the cause was transferred to the circuit court, pursuant to the statute, and came on for trial at the April term, 1858.

After swearing the jury and one witness in the cause, but before any question had been put to the witness, the defendants objected to any evidence being given under the declaration, upon the ground that it contained but one count, and that upon a statute which never existed in the state of Michigan, to wit: Chapter 3 of Title 111 of the Revised Statutes of this state.

The court overruled the objection, and admitted the testimony, and defendants excepted.

Edward Cicotte testified that he knew the bounds of the Conolly farm (so called), in Ecorse, which had been in plaintiff's possession for four or five years. In the spring of

ACHEY *v.* HULL.

1857 saw defendants cutting staves on the rear of the farm. There was a space of three acres cleared; and other parts had been stripped of the best oak timber for staves. Witness saw seven trees cut and barked, which defendant Achey admitted he had cut. The rear of the farm is not fenced in at all; there are one hundred acres or more of the farm on the front, on the Rouge, fenced in, and a house on it.

Antoine Druyer testified that he cut staves on the Conolly farm in the spring of 1857, in the employment of defendant Lapplar. Defendant Achey had a shanty or small house on the land, where he lived with his family and horses.

George Beaubien testified that he saw the defendants cutting staves; that Achey lived on a clearing of three acres, which defendants had cleared and fenced; besides which they had run over about fifteen acres, which was not fenced; that young Achey, son of defendant, used to live in the shanty, and was put there by plaintiff; but left it in the spring of 1857, and went to the west, and his father moved in. The son had cleared the most of the three acres; the father finished the clearing, and fenced it.

Shubael Conant testified that he had possession of the farm since 1820, as agent of A. & A. Lawrence, and caused one undivided half of it to be conveyed to plaintiff, in June, 1853, and put him in possession; had been with plaintiff on the place, and seen his cattle and sheep thereon.

E. C. Walker testified that, as agent of Reuben Davis, he gave plaintiff possession of the other undivided half, in 1853, and that Hull occupied as tenant of Reuben Davis.

John Copland testified, that he owned land adjacent to the Conolly farm. Saw defendants cutting staves; where they were cutting was two and a quarter miles from the front of the farm on the Rouge; there was no fence except around three acres, where defendant Achey's house was; the men were at work in the woods.

Antoine Beaubien, a witness on the part of the de-

MICH—2C.

fendants, testified that defendant ⸢Achey moved into the house about a year ago, and put on an addition. Nobody was in possession there at the time. Achey at once cleared up the three acres which had been cut over before, and fenced it on two sides.

Thomas Henderson, a witness in behalf of the defendants, testified that Achey went into possession of the back end of the farm about April 1, 1857; that he went in as a squatter, supposing the land to be United States lands: witness does not know of any trespass on the land until after Achey went into possession. Achey was on the land when the trespasses were committed.

The above is the whole testimony in the case in regard to the possession of the farm. The defendants asked the court to charge the jury that, under the testimony, the defendant Achey⸴ stood in relation to the premises as the disseizor of the plaintiff, and that the plaintiff could not maintain his action of trespass for cutting and carrying away timber until he had gained possession of the premises by reentry. The court refused so to charge, but did charge the jury, that the possession of the premises by the defendant Achey, as appeared from the testimony, did not amount, in the law, to a disseizin of the plaintiff, and that the plaintiff was entitled to maintain his action of trespass: to which refusal and charge the defendants excepted.

The defendants further asked the court to charge the jury, that the statute under which the action is brought is a penal statute, and that the measure of damages was only the value of the timber cut off, and that they could not take into consideration damages done to the land by reason of cutting down said trees; but the court refused so to charge, and did charge that they should take into consideration the damage to the land, in making up their verdict — to which ruling and charge the defendants excepted. The defendants further asked the court to charge

the jury that, as a matter of law, the possession of a part of a tract of land by the owner is the possession of the whole tract only so long as there is no other person in the actual adverse possession of any part; and that as soon as any other person takes possession of any part, either with or without title, the former person loses the possession of that part, and can not maintain trespass for any act done on such part while he is thus out of possession of it; and that if ·they believe, from the testimony, that defendant Achey was in the actual possession of that portion of the farm in question upon which the trespasses were committed, at the time they were committed, plaintiff could not maintain his action. The court refused so to charge, but did charge that, under the testimony, the defendants' possession was that of a mere trespasser, which was not sufficient to deprive the plaintiff of his right to maintain his action: to which refusal and charge the defendants excepted.

The jury rendered a verdict for the plaintiff, and defendants brought error.

*J. E. Bigelow*, and *J. M. Howard*, for plaintiffs in error:

1. The misrecital of the statute was fatal. — *Bac. Abr.* "*Statute*," L. 5; 8 *Cow.* 115; *Ld. Raym.* 1,224.

2. The facts proved amounted to a disseizin of plaintiff. — 4 *Mass.* 416; 6 *Mass.* 229; 14 *Mass.* 200; 15 *Mass.* 495; 8 *Conn.* 440; 9 *Conn.* 114; 3 *Penn.* 132; 6 *Pick.* 172; 10 *Pet.* 442; 11 *Pet.* 52; 16 *Barb.* 427; 9 *Cow.* 552. Before re-entry, therefore, he could have no action of trespass except for the first entry. — 10 *Pick.* 161; 17 *Mass.* 299.

The statute is penal, and no damages are recoverable beyond the value of the timber cut and carried away. — 8 *Johns.* 342; 1 *Cow.* 584; 25 *Wend.* 420. And there is no allegation in the declaration of any damage to the land.

3. The possession by the owner of part of a tract of

land is constructive possession of the whole only so long as no person is in the actual adverse possession of any part. When there is such adverse possession the former possessor can not bring trespass for an injury to such part. — 4 *Dev. & Bat.* 164.

*Walker & Russell*, for defendants in error:

1. It was unnecessary to cite the chapter of the statute at all. It was sufficient to have referred to it in some general manner. — 3 *Cai.* 41; 3 *Cow.* 684. But the defect, if any, was cured by pleading, and most certainly by verdict. — 9 *Cush.* 131; 22 *Barb.* 244; 10 *Fos.* 209.

2. Disseizins are not favored in law. — 2 *Gilm.* 622; 2 *Cush.* 145. But a person entering, not under color of title, on a portion of a tract of land, the owner remaining in posession, is not a *disseizor*, unless the owner elect to treat him as such; but a trespasser. — 20 *Ala.* 521; 5 *Dana*, 341; 4 *Mich.* 408; 12 *N. H.* 9. At the utmost the adverse possession would only cover the three acres, and would not include the *locus in quo*.

3. There was no error in the rule of damages laid down by the judge. The damages consist in the amount of injury directly resulting from the act complained of.

CAMPBELL J.:

The statute under which this action was brought, provides that persons who cut down or carry off any wood, underwood, trees, or timber, &c., without leave of the owner of the land, shall be liable to the owner in treble damages. If the trespass was casual and involuntary, or the defendant had probable cause to believe the land was his own, and in some other cases, the remedy is confined to single damages. — 2 *Comp. L. p.* 1147.

It is objected to the declaration that it contains no reference to this statute, but refers to an impossible one not contained in any of our statute books. It refers to

chapter three, title one hundred and eleven, of the Revised Statutes, entitled "Of Trespasses on Lands." The true reference should have been to chapter one hundred and eleven. We do not determine what might have been the effect of such a mistake if the declaration had been demurred to, but this declaration having been filed in a justice's court, where form is not so rigidly adhered to, and having been pleaded to, we are not disposed to regard the error as fatal. The title of the statute is correctly given, and there is no other chapter having this title. It would have been a proper case for amendment, and there seems to be no danger that any one could be surprised or misled by the declaration as it stood. We think the mistake is not a sufficient ground for reversal.

The other questions arising refer to the right of action against the alleged possession by the defendants, and to the ruling upon damages. It is claimed that the defendants below were disseizors, and that the plaintiff, not having declared for the wrongful entry, can not recover for injuries done during the possession under it.

If this were an ordinary action of trespass for a disturbance to possessory rights, we are inclined to think there was enough in the case to entitle defendants to go to the jury on this point. But although the counsel for the plaintiff did not draw the distinction, we are of opinion that this action differs from the ordinary action of trespass *quare clausum fregit*, and lies in some cases where that action will not. And in the case before us, we do not regard the question of the defendants' possession, or its nature, as in any way material, except upon the right to treble damages, which does not arise, as the record is now framed, and which is not insisted on.

The statute in question is not framed to protect possessory rights, but was made to give to the owners of the fee a right to sue, in the form of trespass, for the enumerated injuries to their inheritance. If the tenant in

possession, whether owner or not, seeks damages for the disturbance of rights merely possessory, he is still left to his common law action. But here the damages which are allowed to be trebled, are not damages to the temporary possession, but to the freehold.

In Illinois, where they have a statute similar to ours (except in the form of remedy, which is debt), it has been held repeatedly that the declaration must aver in express terms the ownership of the title in fee, and that such a title must be strictly proved, unless informal proof is admitted without objection; and that the action will not lie for injury to the possession.— *Wright v. Bennnett,* 3 *Scam.* 258; *Whiteside v. Divers,* 4 *Scam.* 336; *Clay v. Boyer,* 5 *Gilm.* 506; *Edwards v. Hill,* 11 *Ill.* 22. The latter case holds that the law will not permit separate actions by several joint or common owners. But although this doctrine also applies in general (as was intimated in *Draper v. Williams,* 2 *Mich.* 536), to actions of trespass by tenants in common, yet it seems to be held that their non-joinder can only be set up in abatement, and if not so pleaded, merely goes to apportion the damages. See 1 *Chit. Pl.* 66, *and notes.*

In the present case, Mr. Hull proved, without objection, a claim of ownership to one undivided half of the land, but no more. It was not pleaded or objected that his co-tenant did not join in the suit. And in the absence of any claim or objection that the damages were entire, we can not presume that they were not apportioned.

The question of the defendants' possession, and its nature, is therefore entirely irrelevant, inasmuch as it could only be important in this action to prevent the trebling of damages, in case, he had reason to believe he was on his own land—and no treble damages have been assessed.

The only question remaining, therefore, is, whether the rule of damages was correctly given to the jury. The statute, fairly construed, would include not merely the

ACHEY v. HULL.

value of the timber or wood cut, but such damages as accrued to the freehold by their destruction. When the action is merely for carrying away timber already cut, the damage could not well go beyond its value; but where standing trees are cut down, the rule of damages should fairly be the amount of which the value of the estate is diminished by their destruction.

In the case before us, the declaration contains no distinct allegation of such damages, and for that reason. the court below might possibly have declined, if the objection had been taken to the sufficiency of the declaration, allowing the jury to consider them. A party can not claim damages of this kind, without some allegation to support them; and had the defect been pointed out, unless the court had seen fit to permit an amendment, the plaintiff might perhaps have been confined to the value of the timber. But the only ground taken was that the statute did not permit anything beyond that value; and in denying this, and allowing such damages as directly resulted from cutting the timber, there was no error. No exception is alleged, and no error assigned, on account of the insufficiency of the general allegation of damages to permit such evidence to be received, and we can not reverse a judgment for an error not legitimately before us.

For these reasons the judgment is affirmed.

The other Justices concurred.