LOTT *v.* LOTT.

1. Injunction—Equity — Restraining Ejectment — Defense at Law.

> A defendant in ejectment who has the apparent legal title to the premises in controversy, and whose title can only be defeated by showing as a fact that the premises constituted his grantors' homestead at the time of conveyance, cannot maintain a bill to restrain the action of ejectment, since only legal titles are involved.

2. Homestead—Conveyance—Sufficiency—Joinder of Husband and Wife.

> Section 2, article 16, of the Constitution, requires the wife to join with her husband in the instrument by which alienation of their homestead is brought about, if to a third person, and an attempted conveyance by the wife separately from her husband, pursuant to an oral contract of the husband to convey, is ineffective. Hooker and Grant, JJ., dissenting.

Appeal from Clinton; Stone, J. Submitted February 7, 1906. (Docket No. 34.) Decided December 17, 1906.

Bill by Benjamin W. Lott and Lottie Lott against Corell Lott, Louisa Lott, and Harriet McKibben to restrain an action at law, and to quiet title. From a decree for complainants, defendant Corell Lott appeals. Reversed, and bill dismissed.

*Charles F. Hammond* and *William M. Smith,* for complainants.

*Norton & Jamison,* for appellant.

Ostrander, J. Jacob Lott died intestate in February, 1901. Benjamin and Corell Lott, sons, and Harriet McKibben, a daughter, are the surviving heirs. The mother of these children died in 1865, and in 1875 Jacob married Louisa Lott, who survives him. He owned a farm of

140 acres, described as the west half and the west three-fourths of the east half of the northwest quarter of section 14, acquired in 1853, upon which he lived, and where the children were born.    The house, barns, wells, were on that portion of the land described as the northwest quarter of the northwest quarter of the section.    August 18, 1879, Louisa Lott executed and delivered two deeds, one to Corell Lott, the other to Benjamin Lott, which purport to convey "all of her dower interest as the wife of Jacob Lott" in and to his farm—in the north 70 acres to Benjamin, in the south 70 acres to Corell.    Jacob Lott, on October 3, 1900, executed two deeds, in which his wife did not join, in and by which he conveyed to Benjamin the north, and to Corell the south, 70 acres of said farm.    At about the date of the deeds from Louisa, in 1879, Benjamin and his wife went into possession of the north 70 acres, and Corell and his wife went into possession of the south 70 acres.    Jacob and his wife continued to live on the land in the house with Benjamin.    Corell instituted proceedings to administer the estate of his father, setting out in his petition that the estate consisted of personal property only.    Louisa, who is an incompetent person, through her guardian, made a claim upon each of the boys, after the death of Jacob, upon the theory that she had not by the earlier deeds conveyed her dower interest.    An arrangement was made with her, which was confirmed by the probate court, based upon valuable consideration, paid or to be paid by each, and deeds of conveyance were executed by her guardian, conveying "all the right, title, and interest of said Louisa" in the said real estate.    Later, Corell claimed an undivided one-third interest in 40 acres out of the 70 acres which had been conveyed to his brother, Benjamin, to recover which he began an action of ejectment.    Benjamin, his wife joining, filed his bill of complaint, making his brother, his sister, and the widow parties defendant, to restrain the proceedings at law, and to confirm and quiet his title.    The theory of the bill is that the father, Jacob, proposed as early as the year 1879 to give this farm to his

sons, to each one-half; that he interested himself in pro-
curing and paid a consideration of $500 for the quitclaim
deeds first executed by his wife; that possession was given
of the land—to each son his half—with the statement and
understanding that it belonged to the sons, respectively;
that by mutual agreement each son was to manage his
portion of the farm, and give to the father one-third of all
wheat raised, and to supply him by contributions, made
equally, whatever was further needed for his support and
maintenance; that upon the south 70 acres the father
built a new house and a barn; that since the year 1879
each of the sons has considered that he owned his respect-
ive one-half of the land, and has acted accordingly.
The sister, Harriet, was not served with process.    A gen-
eral guardian's answer was filed for the widow, and a
hearing was had upon the issues presented by the bill and
the answer of Corell.    A decree was made confirming the
title of complainants as against Corell and the widow, and
perpetually enjoining each of them from beginning and
prosecuting any action at law or otherwise to recover the
premises.    From this decree, defendant Corell has ap-
pealed.

The position of appellant is that his father had a home-
stead in and upon the 40 acres of land described in his
declaration in ejectment, of which he had never made a
lawful conveyance, and that upon his decease the title
thereto passed to the three heirs at law; that the interpo-
sition of a court of equity to determine this question is
unnecessary and unwarranted.    The evidence, other than
documentary, which the record contains, was given by com-
plainants, over the objection, not urged in this court, that
it was for the most part incompetent because relating to
facts equally within the knowledge of the deceased father.
Counsel for complainants urge that the case is one for a
court of chancery because the whole arrangement was in
the nature of a family arrangement agreed to and partici-
pated in by Corell, who has received the fruits thereof,
and who is estopped to keep his own, and ask for and re-

cover a portion of his brother's, share of the disposition of property actually attempted.    It is replied that the equities are no stronger than those presented in *Webster* v. *Warner*, 119 Mich. 461, and that, for the reasons set out in the opinion in that case, complainants must fail here. Whether or not the 40 acres in question was regarded as and claimed to be a homestead by the father or mother, when the deed of the father was made, is, first of all, a question of fact.    There is evidence tending to prove that neither parent, at that time, claimed or regarded themselves possessed of homestead rights in the property. Unless there was, in fact, such a homestead interest, complainant here, defendant in the ejectment suit, has the legal title to the land and must, in that action, prevail. Legal and not equitable titles are involved, and no case is presented warranting interference with the action at law.

The reasoning of Mr. Justice HOOKER, and the conclusion he reaches, have the effect, it seems to me, of unsettling the law of the State with regard to the formalities necessary to be observed in alienating a homestead.    The language of the Constitution (art. 16, § 2) is:

"Alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same."

I think that up to the present time the law has been supposed to require the wife to join with her husband in the instrument by which the alienation, if to a third person, is brought about.    It is pointed out by Mr. Justice MONTGOMERY, in *Gadsby* v. *Monroe*, 115 Mich. 282, 284, that the Constitution, in the provision above quoted, deals with the land which constitutes a homestead, and not with any specific interest therein.    This court has said (*Phillips* v. *Stauch*, 20 Mich. 369; *Hall* v. *Loomis*, 63 Mich. 709), that, although the value of the land constituting the homestead be greater than the constitutional exemption, the conveyance is a nullity, and cannot be enforced at all.    And distinction is made if there are par-

cels capable of severance from the homestead. *Engle* v.
*White*, 104 Mich. 15. In this language of the Constitu-
tion, in these decisions and the theory upon which they
proceed, is to be found reason for now holding that a wife
may not convey the land which is a homestead or any part
thereof or interest therein, piecemeal or otherwise, to any
third person, by her separate instrument. Her separate
agreement to convey the land in the future would seem
to have no more validity than her present, sole convey-
ance. It is said that the contract made by the husband,
accompanied by the quitclaim deeds made by the wife,
constituted a valid land contract enforceable in equity
against both. This is another way of saying that a pal-
pable noncompliance with the Constitution may be aided by
another. Or that two evasions may amount in equity
to one compliance. The deeds executed in 1879 by the
wife were attempts on her part to sell the land, includ-
ing that claimed to have been included in the homestead.
She had no interest in the land which she could thus con-
vey. Assume that she intended to sell and convey all her
interest in the land. As matter of law she conveyed no
interest or title. Her deed was totally insufficient. It
was not a promise or agreement to convey in the future.
It was not a joining in her husband's parol agreement.
It was a nullity, not as to a part merely, but as to all of
the land. What she did may be regarded as evidence to
sustain the finding that she assented to the agreement
made by her husband. But her assent, like her husband's
promise, rested entirely in parol. Evidence of her assent
in fact is no stronger here than it was in *Webster* v. *War-
ner*, in *Gadsby* v. *Monroe*, and in *Hall* v. *Loomis*, su-
pra. What she did is also some evidence, I think, of the
fact that when her husband deeded the land in the year
1900, she claimed no homestead. But it is dangerous doc-
trine that a void present conveyance of a homestead is a
valid promise to convey in the future. In my opinion, the
court should adhere to the rule that the conveyance of a
homestead, by a married man, should have the signature

of the wife to the same. The case of *Ring* v. *Burt,* 17 Mich. 472, involved the transfer of a homestead, that of *Rhoades* v. *Davis,* 51 Mich. 309, the transfer by a wife of her dower. The later decision should not be considered as shaking the authority of the earlier one as to the point there in judgment.

The decree is reversed, with costs of both courts to appellant, and a decree will be entered dismissing the bill without prejudice to the rights of any of the parties.

CARPENTER, C. J., and McALVAY, BLAIR, MONTGOMERY, and MOORE, JJ., concurred with OSTRANDER, J.

HOOKER, J. (*dissenting*). In 1879 Jacob Lott owned and lived upon 140 acres of land. At that time he made an arrangement with his two sons by which he gave to them (as far as he could orally) moieties of his farm, and put them in possession thereof. His wife, Louisa, executed and delivered to them quitclaim deeds as part of the transaction. The complainant has lived upon his 70 acres practically all of the time since. At the time the arrangement was made, it was agreed by the brothers that Jacob Lott should receive from them a share of the wheat raised by each, and that a hog should be fatted and a cow kept by each, for him, yearly. His general abiding place, since 1879, was with his son Benjamin, the complainant, occupying, by arrangement, some rooms in the dwelling upon his portion of the farm. Jacob Lott deeded to his sons their respective parcels in 1900, and died in 1901. Subsequently the defendants began ejectment to recover a portion of the 70 acres deeded to the complainant, upon the claim that the 40 acres upon which the dwelling stood was the homestead of Jacob and Louisa Lott, that her deed was void, and that her not joining with her husband in his deed rendered that void, and that the land descended to his children in equal shares. Thereupon complainant filed a bill in equity to quiet his title, obtaining an injunction restraining defendants from prosecuting the ejectment case. That Jacob Lott's agree-

ment in 1879, followed as it was by a surrender of possession and control of the premises for 20 years, was taken out of the statute of frauds, so far as he was concerned, does not admit of serious question.

At the time the contract was made his wife quitclaimed her interest in the premises. Such interest consisted of (1) an inchoate right of dower; (2) a homestead interest. The dower interest is disposed of by a deed, made in February, 1903, in which, under an order of the probate court, she conveyed all of her interest in the estate to the complainant, and it may be added that it would cover any homestead interest remaining in her if she had any at that time. There can be no reasonable doubt that this contract was approved by Louisa Lott, and that she was a party to it. She shared in the benefits arising from its performance, and if her deed did not have the effect of divesting her of her right of dower (see *Randall* v. *Randall*, 37 Mich. 563; *Rhoades* v. *Davis*, 51 Mich. 306; *Wright* v. *Wright*, 79 Mich. 531; *Dakin* v. *Dakin*, 97 Mich. 287; *Chittock* v. *Chittock*, 101 Mich. 369), which we need not decide, it was equivalent to giving her consent to the contract, which, had it been in writing and signed by Jacob and Louisa Lott, would have cut off dower and homestead rights in both. While all of the terms of the contract were not in writing, she, by her signed quitclaim deed, did enough to comply with the constitutional provisions (article 16, § 2), as we will proceed to show. The husband's oral contract was void at law, under the statute of frauds. It was, however, not void, but only voidable, in equity, so far as the statute of frauds is concerned.

The husband's contract, whether oral or written, unless accompanied by the written assent of the wife, was absolutely void, both in law and in equity, because of the provision of the Constitution, art. 16, § 2. Had it been in writing and signed by the wife it would have complied with such provision and been enforceable in equity. Being oral, it must be treated as absolutely void, in equity as well as at

law, unless the wife can be said to have assented to it in writing. If she did so assent, it would be valid in equity, though oral on the part of the husband, unless we are required to hold that her assent, though in writing, is inadequate, because not given in exact accordance with the statute; i. e., by signing a writing executed by the husband. We have no difficulty, under the proof in the cause, taken in conjunction with the defendant's answer, in finding that the husband and wife joined in the oral agreement, substantially as alleged in the bill, and that she put her assent to it in writing as a part of the transaction, and upon a special consideration moving to her. Such writing consisted of two quitclaim deeds, in which she expressly sought to convey her right of dower, "together with all the estate, rights, title, interest, claim, or demand whatsoever  *  *  *  either in law or in equity, of, in and to the premises." The deed was broad enough in its terms to embrace any right or interest that she had in the land. Had the transaction, i. e., the oral agreement, been also accompanied by deeds from her husband, it would be an exceedingly technical construction of the homestead law to hold that his and her deeds, though separate instruments, were not a substantial compliance with the requirements of the homestead provisions, constitutional and statutory, and that all of the deeds not only failed to convey the homestead, but were void in equity, because the parties made separate deeds instead of joining in one. We think that there is no case that requires us to so hold. The case that perhaps comes the nearest to sustaining such a proposition, is *Ring* v. *Burt*, 17 Mich. 472, and in that case the ground upon which it rests, and the reasons given, more than the conclusion reached, require such holding. They were, briefly, that, at the common law, a married woman was incapable of entering into a binding contract affecting any right that she might have in her husband's property, and that such disability then continued in this State, unless removed by statute, and that while the married woman's act (so known) removed any disability that theretofore

existed as to her sole or separate property, it went no further; that the right to a homestead in her husband's lands was no more in the nature of such property than the right of dower, and that there was a striking similarity as to such rights, and that the only way that she could convey or incumber (or in any manner affect by contract), either of the rights during coverture, was by joining in a deed or mortgage with her husband, according to the statute.

In that case the contract was made by the husband and wife, but was oral. The wife signed no writing. She gave no deed at any time, and the court refused to specifically enforce the contract, because the wife had signed no writing at all. That is as far as it was necessary to go, and the case in no way involved the question raised here; i. e., whether a signature by the wife of a separate consent to the oral contract would make such oral contract valid in equity, and not a violation of the homestead law. But we must read that case in the light of the later one of *Rhoades* v. *Davis*, 51 Mich. 309, which held that a wife's release to her husband of her inchoate right of dower by a quitclaim deed signed only by her was good even in an action at law. It was contended, *first*, that before the statute of 1855 (married woman's act) a married woman could not relinquish to her husband her incipient right of dower, by giving him a deed; and, *second*, that this right, not being a separate estate, its disposal had not been affected by such legislation.

As to the first question, the court merely said:

" Whether the method of barring dower which the statute approves by joining in the husband's deed or with the guardian, or by her sole deed to a third person, who has obtained the husband's title should be deemed exclusive where the case does not depend on an act of relinquishment directly to the husband, may be left for future inquiry."

Upon the second, it said that it *seemed to have the support of a dictum* in *Ring* v. *Burt*. Calling attention to the statement made there, that a married woman could

not affect her homestead right, except by joining in a deed or mortgage with her husband, the opinion said:

"This was not the point in judgment, and the remark was only a casual observation in the course of argument. However entitled to respect as the expression of an eminent judge, the court cannot regard it as an adjudication."

The opinion clearly disapproved of the doctrine and discredited the case of *Ring* v. *Burt.* The opinion continues as follows:

"The first consideration is, what, in the light of reason, is this 'possibility of dower accruing to the wife after marriage, but before the death of the husband?' The authorities universally deny that it constitutes an estate; at the same time they admit, with equal unanimity, that it is a right concerning land, and one which possesses value. In *Greiner* v. *Klein* a majority of this court were of opinion that it was of such worth that a sale in partition would not bar it, unless the wife were a party to the suit. 28 Mich. 12. Again, in *Farwell* v. *Johnston*, 34 Mich. 342, and in *Bissell* v. *Taylor*, 41 Mich. 702, it was ruled unanimously that the right was salable by the wife, and had sufficient purchasing power to supply a legal consideration for a conveyance to her. And in *Randall* v. *Randall*, 37 Mich. 563, it was determined that the right was of such nature that the wife, by deeding directly to the husband, might work an equitable sale of it, whereby to furnish a consideration capable of upholding a grant to herself. See, also, *Miller's Ex'r* v. *Miller*, 16 Ohio St. 528; *Wilson* v. *Wilson*, 1 H. L. Cas. 538.

"Here, then, is something belonging to the wife which she may part with or retain. It possesses a money value, and may be the object of sale and release. It is capable of being dealt with as property. The statutes and the decisions recognize it as property. True, it cannot be shifted from one to another without reference to the repository of the general title. The nature of the thing forbids it. The only point here is whether the husband, who holds the land subject to this right, may not continue and at the same time receive directly from his wife a release by deed, provided the transaction is supported by a satisfactory consideration and is in all respects fair and reasonable. If the question were in equity and subject to be adjudged by the long-settled principles on which rights

and titles are there founded and enjoyed, and by which their use and disposal are regulated, the result would neither be novel nor uncertain. The release would operate as a bar in equity. But the inquiry arises on the other side of the court. It is a question of law. And until the act of 1855 it was the general doctrine of the courts of common law that the wife was not capable of enjoying and disposing of her own property at her own election, and moreover that the married pair could not contract directly with each other. The subject is quite fully explained in *Burdeno* v. *Amperse*, 14 Mich. 91. But that statute made a great change. It provided that coverture should in no wise disable the wife from selling what was her own, nor in any manner interfere with her disposal of it. No distinction is made between kinds of property. The language takes in all without exception. Now, since the right in question is her property, and is a legitimate subject of sale, why may she not part with it in point of law to whomsoever holds the title to which it is germane ? And since husband and wife may now by the rules of law, as well as those of equity, make mutual contracts with regard to property, and sell and deed to each other (*Burdeno* v. *Amperse*, supra; *Ransom* v. *Ransom*, 30 Mich. 328) why may she not sell and release directly to her husband ?

"No reason is perceived that would not infringe the spirit of the legislation of 1855. By means of that enactment, the faculty to transact, and the fact transacted, which were antecedently pure matters of equity, were legitimated at law and clothed with the attributes of law. The consequential effect of the act of release upon the future of the right can present no objection.

" That the act in which she parts with the right, and so disposes of it, does at the same time determine it, is not an obstacle. These consequences are the due expressions of opposite sides of the same fact. The object aimed at is to cause a cessation of the right, and not an existence of it in new hands. The sale being made fairly, and in accordance with the dictates of equity, and regularly carried out by deed on one side and exemplary performance on the other, the transaction operates by way of release of the right in contemplation of law, and implies an obligation not to reassert it.

" It is very naturally suggested that this view is not consistent with the opinion which the legislature is pre-

sumed to have entertained when they passed the act of 1877, providing that the wife might bar her dower by her separate deed to whomsoever was the holder of the husband's title. Act No. 65, Pub. Acts 1877. If the wife, it is said, was already able to dispose of this right by her sole deed, it was needless to re-enact authority for her. This argument is not without force, but it is not controlling. The principles which underlie the case will not submit to it. It has happened here, as in some other instances in the history of legislation, that the legislature has proceeded on an inaccurate opinion of the true meaning and proper scope of an existing law. *Talbot* v. *Seeman*, 1 Cranch (U. S.), 1–35; *Postmaster General* v. *Early*, 12 Wheat. (U. S.) 136–148; *Jackson* v. *Phelps*, 3 Caines (N. Y.), 62–68, 69, per Kent, C. J.; *Mersey Docks* v. *Cameron*, 11 H. L. Cas. 443–518; *Van Norman* v. *Jackson Circuit Judge*, 45 Mich. 204. According to these views the circuit court should have entered judgment for the defendant."

This sustained a deed of the wife in which the husband did not join, and therefore held that a literal interpretation should not be required. In the earlier case of *Randall* v. *Randall*, 37 Mich. 566, this court sustained the validity of a wife's deed of her dower and homestead rights, made upon a sufficient consideration. In speaking of the dower right, which, in *Ring* v. *Burt*, was said to be of similar nature to homestead interests, the court said: "The release was perfectly good in equity, whether it was in law or not." And the conveyance was sustained. This was also an action at law, viz., assumpsit.

In *Penfold* v. *Warner*, 96 Mich. 181, we recognized this rule by saying:

"As the title then stood, Barbara E. Zimmerman had no title in the premises. She had an inchoate right of dower, which she might release by joining with her husband in a deed of the premises, or by her conveyance to the holder of the title. *Rhoades* v. *Davis*, 51 Mich. 306. It was not an interest that could be conveyed by her so long as the husband held the title to the fee."

See, also, *Dakin* v. *Dakin*, 97 Mich. 286, where there is an extended discussion as to the wife's right to contract

in relation to such interests. Whatever may be thought of the rule as to homesteads, these cases may reasonably be thought to justify the rule that in equity a wife's deed of an inchoate right of dower to one having an equitable title to the fee of the land, made for a valuable consideration, conveys her interest to the extent of the equitable interest conveyed by the husband, and no good reason is suggested for a contrary holding in relation to her homestead rights. We are therefore of the opinion that the contract made by the husband, accompanied by the quitclaim deeds made by the wife, constituted a valid land contract enforceable in equity against both.

It becomes necessary to consider the further question of adequacy of a legal remedy. The defendant denies that the complainant has any title either legal or equitable, but asserts in his answer that the bill should be dismissed, for the reason that there is an adequate remedy at law. Passing the questions arising out of these apparently inconsistent claims, and the rule that one who answers to the merits cannot raise the question (see *Lothrop* v. *Duffield*, 134 Mich. 492; *Berdan* v. *Insurance Co.*, 136 Mich. 405, and cases cited), and the rule that where equity takes jurisdiction for one purpose, as the issue of an injunction, it will retain jurisdiction and dispose of the case though an adequate legal remedy might have been had, all or some of which may or may not be properly applicable to this case, we will take up the question of an adequate legal remedy.

The deeds of the wife made in 1879 did not convey a legal title to her dower and homestead interests, for the reason that the grantees had no other legal interest or estate in the premises. *Penfold* v. *Warner*, 96 Mich. 179, and other cases cited. The deeds of the husband, though made in 1900, were invalid at law under the homestead law, not being signed by the wife; her former deeds being effective only as contracts. The status, then, was that the complainant was still in occupancy under a land contract made by husband and wife, invalid under the stat-

ute of frauds, but subject to enforcement specifically in equity. Then followed the deeds from the guardian of the wife. These deeds, if effective to convey her interest, the husband being dead (which we need not decide), did not make valid the deeds given by the husband, which were void at law when given, so that in any event, the complainant had not the legal title of which the husband died seised; and the contract not being available as a defense to the ejectment, there was no adequate legal remedy. Hence the propriety of a proceeding in equity to enforce this contract and quiet complainant's title. The bill might have been more specific in its allegations and prayer, but it states all necessary facts to support a decree of specific performance, and the general prayer will cover such relief.

A decree should be entered adjudging complainant to have the equitable title to the premises, specifically enforcing said contract, and requiring the defendants to quitclaim to the complainant all of their interest in the premises within 10 days, and that this decree or a record thereof in the office of the register of deeds of said county, where it may be recorded, shall be evidence of complainant's title. The complainant should recover costs of both courts.

GRANT, J., concurred with HOOKER, J.