MAILHOT *v.* TURNER.

1. CONTRACTS—LEASE—EXECUTORY AGREEMENT.
    A proposition to lease, accepted by the signature of the lessor, upon which the lessee was placed in possession for the purpose of estimating values, where no intention appears to execute further instruments, constituted a present, executed lease,—not an agreement to lease.

2. HOMESTEAD—CONSTITUTIONAL LAW.
    A lease of the homestead and other real property, of such a nature as to exclude the wife from possession of the homestead, is void without her signature.  Constitution, Art. 16, § 2.

3. SAME—ACTIONS—CONSTRUCTION—SEVERABLE PROVISIONS.
    Damages are not recoverable on any portion of the lease, although it includes a provision for the sale of personal property, where the intention was to execute an inseparable contract.

Error to Cheboygan; Shepherd, J.  Submitted January 13, 1909.  (Docket No. 80.)  Decided June 7, 1909.

Assumpsit by Joseph H. Mailhot against George H. Turner for breach of a contract for the sale of certain real estate. A judgment for defendant on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Benjamin & Quay*, for appellant.

*Frost & Sprague*, for appellee.

BLAIR, C. J. For some time previous to January 20, 1906, plaintiff and defendant were the only merchants engaged in business—grocery and general store—in the village of Topinabee, a summer resort on Mulletts Lake. There were only three store buildings, one of which was owned and occupied by the plaintiff, and the others owned and occupied by the defendant. Plaintiff presented to defendant a written proposition, which proposition was signed by defendant, and thereby, plaintiff claims, became a binding agreement between the parties. The agreement was as follows:

"Jan. 20, 1906.

"Mr. G. H. TURNER.

"*Dear Sir:* I make you the following proposition for the purchase of your property: I will lease the properties described as lot one, block seven, and lots five and six, block one, village of Topinabee, and the buildings thereon, for a period of four years from date of this agreement, at a monthly rental of $15.00 for both properties, with the privilege of purchasing said properties at any time within four years from date of agreement, for the sum of $2,000.-00. The stock to be taken by me at 75 cents on the dollar of invoice price. Payment to be made in the following manner: $1,500.00 cash, remainder in notes to be paid at the rate of $25.00 or more per month until paid in full, with interest on deferred payments at the rate of 6 per cent. per annum. To be secured by a mortgage second to one of $1,000.00. The show cases, etc., etc., to be taken by me at the rate of 50 cents on a dollar invoice price.

"J. H. MAILHOT.
"G. H. TURNER."

The buildings on lot 1 consisted of a store and a living house attached to it. Defendant and his wife lived in the house. Defendant did not own the title in fee to lot 1, block 7, but owned a life estate therein. Defendant refused to carry out the agreement, and plaintiff brought this action for damages alleged to have been suffered in consequence of such refusal. At the conclusion of the testimony, the court directed a verdict for the defendant, and plaintiff brings the case to this court for review upon writ of error.

Treating the signature of defendant to the plaintiff's proposition as creating a contract between the parties containing their entire agreement, we think the plaintiff's counsel misinterpret the effect thereof. The contract was not, in our opinion, an agreement for a lease, as claimed by plaintiff, and was not so regarded by the parties. Shortly after the signing of the agreement, defendant put plaintiff in possession of the store building and other buildings on lots 5 and 6, in block 1, and permitted him to look over the stock, for the purpose of estimating its value. Afterwards plaintiff gave up the possession of the real estate last mentioned to defendant. Plaintiff never demanded a written lease or bill of sale, nor is there any intimation in his testimony that he supposed any further papers were to be executed. In the light of the testimony, we think it should be held that the agreement was intended by the parties as, and was, a present lease of the real property for a period of four years from January 20, 1906, at a monthly rental of $15, with an option to purchase at any time within four years for the sum of $2,000. The constitutional provision as to homesteads provides that a mortgage thereof "or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of the wife to the same." Constitution, Art. 16, § 2. This provision covers a lease of the homestead, at least where, as in this case, it would exclude any enjoyment of the premises by the wife. 15 Am. & Eng. Enc. Law (2d Ed.), p. 674, subd. 4; *Maatta* v.

*Kippola,* 102 Mich. 116 (60 N. W. 300). The lease of the homestead, without the signature of the wife, was absolutely void, just as a deed of the homestead without her signature would have been void. So far as the leasehold interest was concerned, the instrument in question was not an agreement to alienate the premises, but was the instrument of alienation itself, and, lacking the signature of the wife, was invalid. *Lott* v. *Lott,* 146 Mich. 580 (109 N. W. 1126, 8 L. R. A. [N. S.] 748); *Maatta* v. *Kippola, supra.*

Plaintiff treats the agreement as an agreement to execute a lease, and contends that, while it was so far void as not to support a decree for specific performance, it was so far valid as to support an action for damages for nonperformance. Plaintiff further contends, as follows:

" (b) Even if it could be held that the agreement to lease and sell the real estate was void on account of it not having been signed by the wife, would that affect the validity of the sale of the personal property—the stock of goods? We think not. The proposition to purchase and the price to be paid therefor and the method of payment are fully set forth in the memorandum, and are distinct and separable from the proposal to lease and sell, and this part of it need not be signed by the defendant's wife, so that, even if this court should hold that the plaintiff cannot recover damages for the agreement in reference to the real estate, plaintiff could still recover for his damages sustained by the refusal to carry out the agreement to sell the personalty."

It appears from the plaintiff's testimony that defendant wished to dispose of all of the property, for the reason that he intended to remove with his family from Topinabee to Sault Ste. Marie and make his home there. The contract itself indicates that it was an entire and indivisible contract. The bill of particulars bases the right of recovery upon the contract, and it is clear that the lease of the real estate with the privilege of purchase was regarded as an essential part of the contract, without which probably neither party would have entered into it. The

rent was not divided between the separate properties, but was a single sum for both properties, and, when plaintiff was refused possession of the homestead, he surrendered the possession of the other real estate. Evidently, if he could not have the homestead, he did not want the other real property. We are therefore of the opinion that the invalidity of the lease as to the one description avoided it as to both. The agreement provided for the leasing of the stores and the purchase of the stock and fixtures therein as mutually dependent, the one upon the other. Neither of the parties was bound by the lease of the real estate, and therefore neither of the parties should be held to be bound by the agreement as to the personal property, which was in no sense independent of the lease. *Co-operative Telephone Co.* v. *Katus*, 140 Mich. 367 (103 N. W. 814, 112 Am. St. Rep. 414).

The judgment is affirmed.

GRANT, MONTGOMERY, OSTRANDER, and MCALVAY, JJ., concurred.