## ELDRED *et al.* v. OKMULGEE LOAN & TRUST CO.

No. 857, Ind. T.    Opinion Filed December 1, 1908.

(98 Pac. 929.)

**INDIANS—"Alienation of Lands"—Validity of Lease.** A lease is an "alienation of lands," within the intent and meaning of Act April 21, 1904, c. 1402, 33 Stat. 204.

(Syllabus by the Court.)

*Error from the United States Court for the Western District of Indian Territory, at Muskogee.*

Action by the Okmulgee Loan & Trust Company against John G. Eldred and others. Judgment for plaintiff, and defendants bring error. Reversed.

On December 29, 1906, Okmulgee Loan & Trust Company, defendant in error, plaintiff below, sued J. G. Eldred and A. W. Leonard, plaintiffs in error, defendants below, in the United States Court for the Indian Territory, Western District, at Muskogee, to clear its title to the W. $\frac{1}{2}$ N. W. $\frac{1}{4}$ section 9, township 12 N., range 14 E., I. M., in the Creek Nation, and in its amended complaint, in substance, states: That it is a domestic corporation; that the land is a portion of the allotment of Mary Jackson, a citizen of that nation; that she was a Creek freedman, and as such, on the 16th day of August, 1906, received a patent therefor, from the Principal Chief of said nation; that on said day she for a

valuable consideration, by warranty deed, sold the same to plaintiff, who since that time has been in possession as owner thereof in fee; that on July 10, 1905, said Mary Lewis, formerly Jackson, with her then husband, Webster Lewis, made, executed, and delivered to defendant J. G. Eldred an oil and gas mining lease, covering said premises, and thereby undertook to convey to him all the oil and gas rights under and within said land, who, on July 23, 1905, sold and assigned an undivided three-fourths interest in said lease to A. W. Leonard, and filed as an exhibit a copy thereof, and charged that the same had never been approved by the Secretary of the Interior, and was void; that defendants are asserting an interest in said premises by virtue of said lease, which they had caused to be duly recorded, and are seeking to take possession of the premises for the purpose of prospecting for oil and gas, which they have no right to do; that the oil and gas rights reserved to the lessor are of great value; that the claim of defendants constitutes a cloud on plaintiff's title, and pray that the same be set aside and the title quieted.

To this there was a general demurrer, which the court overruled; and, defendants electing to stand thereon, a decree was entered, declaring said lease void because not approved by the Secretary of the Interior, and for that reason a cloud upon plaintiff's title, and removing the same, and plaintiff's title to said land quieted, to all of which defendants excepted, and have prosecuted their appeal to the United States Court of Appeals for the Indian Territory, and the same is now before us for review, as successors of that court, by virtue of the terms of the Enabling Act.

*James L. Allen,* for plaintiffs in error.

*Moore & Noble, N. A. Gibson* and *George S. Ramsey.* for defendant in error.

*A. L. Beatty, amicus curiae.*

TURNER, J. (after stating the facts as above). It is contended by plaintiffs in error that the court erred in overruling their demurrer, for the reason that. prior to the making of her lease to

Eldred, all restrictions upon the alienation of the lands of Mary Jackson, imposed by the act of Congress, approved March 1, 1901 (chapter 675, § 10, 31 Stat. 850), which reads: "Lands allotted to citizens hereunder, shall not in any manner whatsoever, or at any time, be incumbered, taken or sold to secure or satisfy any debt or obligation contracted or incurred prior to the date of the deed to the allottee therefor, and such lands shall not be alienable by the allottee, or his heirs, at any time before the expiration of five years from the ratification of this agreement, except with the approval of the Secretary of the Interior," and Act June 30, 1902, c. 1323, § 16, 32 Stat. 503, ratified August 8, 1902, which reads: "Lands allotted to citizens shall not, in any manner whatever, or at any time, be incumbered, taken or sold to secure or satisfy any debt or obligation, nor be alienated by the allottee or his heirs, before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior"—were removed by that part of the act of Congress, approved April 21, 1904 (33 Stat. 204, c. 1402), which reads: "And all restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed"—and for that reason said lease was valid and binding, and should not have been removed as a cloud upon plaintiff's title.

By defendant in error it is contended that, construing said sections with section 37 of the act approved March 1, 1901 (31 Stat. 871, c. 676), which reads: "Creek citizens may rent their allotments when selected, for a term not exceeding one year, and after receiving title thereto, without restrictions, if adjoining allottees are not injured thereby," etc.; and with section 17 of the act approved August 8th, which reads: "Creek citizens may rent their allotments for strictly nonmineral purposes, for a term not to exceed one year, for grazing purposes only, and for a period not to exceed five years for agricultural purposes, but without any

stipulation or obligation to renew the same. Such leases for a period longer than one year, for grazing purposes, and for a period longer than five years for agricultural purposes, and leases for mineral purposes may also be made with the approval of the Secretary of the Interior, and not otherwise. Any agreement or lease of any kind or character violative of this paragraph shall be absolutely void, and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity," etc.; and the act approved April 21, 1904, *supra*, removing restrictions on "alienation"—it was not intended to remove restrictions on leasing, and that, as the lease sought to be removed as a cloud upon its title did not have the approval of the Secretary of the Interior, it was void, and the court did not err in setting it aside.

Both sides agree, and we think properly, that if a lease is an "alienation" within the intent and meaning of the latter act, then restrictions on the right to lease were thereby removed, and the lease in controversy is valid, otherwise not.

Is, then, a lease an "alienation" within the intent and meaning of that act? As we are of the opinion that sections 7 and 37 of the act of March 1, 1901, *supra*, were repealed by sections 16 and 17 of the act ratified August 8, 1902, *supra*, the question narrows down to a proper construction of sections 16 and 17 as construed with that part of the act of April 21, 1904, *supra*. By the first clause of section 16, it will be seen, as held by this court in *Western Investment Company c. Kistler, ante,* p. 222, 97 Pac. 588, that Congress was dealing with exemptions, and fully covered the subject, and in the second clause passed to restrictions on alienation. It is apparent that the term "lease" as contained in said treaties, is not used in the sense of an incumbrance, nor intended to be comprehended by that term. But the question here for our determination is whether or not a lease is a species of alienation. We think so, and that it was so considered by Congress. In recognizing that the allottee might not be able to farm

his allotment in person with a restriction against any alienation, he would not be allowed to do so, through a tenant; and accordingly it is specially provided that he may carve therefrom a leasehold estate for a year, or for five years, or with the approval of the Secretary of the Interior for a longer term of years, and as to mineral purposes, for any term, likewise with his approval, and to convey the same to such tenant or lessee. Thus stood the law at the time of the act of Congress approved April 21, 1904, *supra,* providing, in effect, for the removal of all restrictions upon the alienation of lands of all allottees of the Five Civilized Tribes of Indians, not of Indian blood, etc. It is, we think, apparent that said act was leveled at restrictions upon leasing, as well as restrictions upon sales, and removed them both. If this is not the proper construction, and that contended for by defendant in error is, then Congress was guilty, in this instance, of the use of terms, the correct construction of which will inevitably lead to a *reductio ad absurdum,* in that the greater does not include the lesser; that an allottee, as to his surplus, can alienate it by deed in fee simple, can give it away, but cannot lease it for a term of years. We decline to adopt such construction. Not only do we think a lease an alienation within the intent and meaning of that act, but such it is in the legal sense.

Out of an estate in fee there is capable of being carved and alienated or conveyed a number of estates. Estates are divided into those of freehold and those less than freehold. It would answer no good purpose to enter into a discussion of these lesser estates, which may be carved out and conveyed or alienated by deed. Suffice it to say that among others are leasehold estates, or leases for a year, a term of years, or for life. Can it be doubted for a moment that the carving out and conveying of any of these lesser estates is an alienation, or a parting by sale of that particular estate? We think not. In speaking of the modes of conveyance, 2 Chitty's Blackstone, 294, says:

"We are next, but principally, to inquire how a man may alien or convey, which will lead us to consider the several modes of

conveyance. A translation or transfer of property being thus admitted by law, it became necessary that this transfer should be properly evidenced, in order to prevent disputes, either about the fact as to whether there was any transfer at all, or concerning the persons by whom, and to whom, it was transferred, or with regard to the subject-matter, as what the thing transferred consisted of, or, lastly, with relation to the mode and quality of the transfer, as for what period of time, or in other words, for what estate and interest, the conveyance was made."

In chapter 20, entitled "Alienation by Deed," p. 310, it says:

"Original conveyances are the following: (1) Feoffment; (2) gift; (3) grant; (4) lease; (5) exchange; (6) partition."

And again on page 314:

"Livery of seisin, by the common law, is necessary to be made upon every grant of an estate of freehold in hereditaments corporeal, whether of inheritance or for life only. In hereditaments incorporeal it is impossible to be made; for they are not the object of the senses, and in leases for years, or other chattel interests, it is not necessary. In leases for years, indeed, an actual entry is necessary to vest the estate in the lessee, for the bare lease gives him only a right to enter, which is called his 'interest in the term.' or *'interesse termini,'* and when he enters in pursuance of that right, he is then, and not before, in possession of his term, and complete tenant for years."

And again, on page 317:

"A lease is properly a conveyance of any lands or tenements (usually in consideration of rent or other annual recompense) made for life, for years, or at will."

Hence we conclude that a lease conveys a leasehold estate; is an "alienation by deed"; is an alienation within the intent and meaning of the act of April 21, 1904, *supra,* upon which species of alienation restrictions by that act were removed; and that the trial court erred in overruling the demurrer to plaintiff's complaint, and in setting aside the lease complained of, and removing it as a cloud from the title of defendant in error, and for that reason, the case is reversed and rendered.

All the Justices concur.