## TIDWELL *et al.* v. DOBSON *et al.*

### No. 2534.   Opinion Filed April 4, 1913.

#### (131 Pac. 693.)

1.  **INDIANS—Lease of Lands—Restrictions.** By Act Cong. June 7, 1897, c. 3, 30 St. at L. 72, the restrictions as to alienation of lands allotted members of the Quapaw Indian Tribe under Act March 2, 1895, c. 188, 28 St. at L. 907, were so modified as to grant to allottees of such tribe the power to lease their allotted lands for a term not exceeding three years for farming or grazing purposes, and for a term not exceeding ten years for mining or business purposes, without the approval of the Secretary of the Interior, except in cases where the allottee by reason of age or other disability was incompetent to properly manage his allotment.

2.  **SAME—Mining Lease—Assignment of Royalty—Validity.** An assignment of royalty due under a mining lease given by a Quapaw Indian on his allotment is valid under Act March 2, 1895, c. 188, 28 St. at L. 907, as modified by Act June 7, 1897, c. 3, 30 St. at L. 72. Following **Wat-tah-noh-zhe v. Moore**, 36 Okla.— 129 Pac. 877.

(Syllabus by Harrison, C.)

*Error from District Court, Ottawa County;*
*T. L. Brown, Judge.*

Action by Moody R. Tidwell and another against W. W. Dobson and Mary Moore. Demurrer to answer of Mary Moore sustained, but overruled as to answer of defendant Dobson, and from judgment rendered for such defendant, plaintiffs bring error. Affirmed.

*E. E. Sapp and A. Scott Thompson,* for plaintiffs in error.
*S. C. Fullerton,* for defendants in error.

Opinion by HARRISON, C. This was an action by Moody R. Tidwell and W. C. Lykins against W. W. Dobson and Mary Moore to clear title to a tract of allotted land in the Quapaw Indian reservation. One Ohs-ta-wat-tah, a citizen of the Quapaw Tribe of Indians, was the original allottee of the land in question. Plaintiff claimed title by virtue of a warranty deed from the heirs of Ohs-ta-wat-tah. Defendant Mary Moore claimed

an interest in the land by virtue of a lease from Ohs-ta-wat-tah during her lifetime. Defendant Dobson claimed an interest by virtue of an assignment of royalty from the heirs. Upon Ohs-ta-wat-tah's death, her lands descended to her heirs. There seems to have been two families of heirs, and after her death one C. M. Harvey procured mining leases from each family to the land in question for a period of ten years, after which defendant Dobson procured from one family of heirs, to wit, George Red Eagle and wife, Hinnie Red Eagle, and sister, Grace Red Eagle Sacto, an assignment of the royalties due them from the lease of C. M. Harvey. At the trial of the cause the demurrer to the answer of Mary Moore being sustained, she dropped out of the case, and judgment was rendered foreclosing her of all interest in the land. The issues between plaintiffs and defendant Dobson were whether the heirs of a Quapaw allottee could alienate the allotment by a mining lease, and whether, if so, the royalties due such heirs from such lease could be legally assigned. The court decided both issues in favor of defendant Dobson. Plaintiffs excepted and appealed from the judgment.

It is true, as contended, by plaintiffs in error, that Congress by Act March 2, 1895, c. 188, 28 St. at L. 907, designated as the Quapaw Allotment Act, restricted the members of the Quapaw Indian Tribe in the alienation of their lands for a period of 25 years. It is also true, and was so held by this court in *Eldridge v. Okmulgee Loan & Trust Co.*, 22 Okla. 742, 98 Pac. 929, that the granting of oil, gas, or mining leases is an alienation within the meaning of the act of Congress. But it must be observed that by Act of Congress approved June 7, 1897 (chapter 3, 30 St. at L. 72), the restrictions of members of the Quapaw Indian Tribe were modified so as to permit members of such tribe to lease their allotted lands for terms not exceeding three years for farming and grazing purposes, and not exceeding ten years for mining or business purposes. Said act reads as follows:

"That the allottees of land within the limits of the Quapaw Agency, Indian Territory, are hereby authorized to lease their lands, or any part thereof, for a term not exceeding three years for farming or grazing purposes, or ten years for mining or business purposes. And said allottees and their lessees and tenants shall have the right to employ such assistants, laborers, and help from time to time as they may deem necessary; provided, that whenever it shall be made to appear to the Secretary of the Interior, that, by reason of age or disability, any such allottee can not improve or manage his allotment properly and with benefit to himself, the same may be leased, in the discretion of the Secretary, upon such terms and conditions as shall be prescribed by him. All acts and parts of acts inconsistent with this are hereby repealed."

This act clearly gives the right to such Indians to lease their allotted lands for farming or grazing purposes for periods not exceeding three years, and for mining or business purposes for periods not exceeding ten years, without the approval of the Secretary of the Interior, except in cases where the allottee by reason of age or other disability was incompetent to properly manage his allotment.

The question as to whether the royalties due an allottee under a mining lease can be legally assigned was decided by Judge Campbell of the Eastern District of Oklahoma, in *United States v. Abrams et al.* (C. C.) 181 Fed. 847, which opinion was affirmed by the United States Circuit Court of Appeals May 23, 1912, (*United States v. Noble,* 197 Fed. 292, 116 C. C. A. 654), in an opinion by Judge Smith of said court. The same question was decided by this court January 7, 1913, in *Wat-tah-noh-zeh et al. v. Moore,* 36 Okla.——, 129 Pac. 877, where, in an opinion by Judge Robertson, it was held that an assignment of royalty due under a mining lease given by a Quapaw Indian on his allotment is not an alienation of a part of the real estate in violation of Act March 2, 1895, c. 188, 28 St. at L. 907, making such allotments inalienable for 25 years; following *United States v. Abrams* (C. C.) 181 Fed. 847.

We conclude, therefore, that these issues were correctly determined by the court below, and the judgment should, therefore, be affirmed.

By the Court: It is so ordered.