RILEY et al. v. KELSEY et al.

(District Court, E. D. Oklahoma. November 2, 1914.)

No. 2034.

INDIANS (§ 16*)—HOMESTEAD OF DECEASED ALLOTTEE—ROYALTY FROM OIL AND GAS LEASE.

    Act May 27, 1908, c. 199, § 9, 35 Stat. 312, provides that, if any member of the Five Civilized Tribes of Indians of half or more Indian blood "shall die leaving issue surviving born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable * * * for the use and support of such issue during their life or lives until April 26, 1931." Section 2 of the act authorizes the leasing of restricted lands for oil and gas with the approval of the Secretary of the Interior. *Held*, that the provision of section 9 restricting alienation of the homestead for the use and support of the issue of the deceased allottee contemplates its use only for agricultural or grazing purposes, or such other use as would not conflict with the provision against alienation of the land, and does not authorize its leasing for oil and gas, which is to that extent inconsistent with the restriction, but that such authority is found only in section 2; that where such a homestead is leased by the heirs in whom the title is vested, with the approval of the Secretary, the royalties received from the oil or gas produced belong to the heirs according to their several interests.

    [Ed. Note.—For other cases, see Indians, Cent. Dig. § 45; Dec. Dig. § 16.*]

In Equity. Suit by Tootie Riley, by U. G. Stockton, guardian, and James Riley against Dana H. Kelsey and others. Decree distributing fund in hands of defendants.

Horton & Smith, of McAlester, Okl., for plaintiffs.

C. H. Tully, of Eufaula, Okl., and Carter Smith, Asst. U. S. Atty., of Muskogee, Okl., for defendants.

CAMPBELL, District Judge. From the evidence and admissions in the pleadings in this case the facts are found to be substantially as follows: Emma Derrisaw was a duly enrolled full-blood member of the Creek Tribe of Indians. The plaintiff Tootie Riley is her illegitimate

child by the plaintiff Thomas Riley. Thomas Riley and Emma Derrisaw were never married according to the laws of the Creek Nation, nor according to the laws of Arkansas in force in Indian Territory, nor were their relations such as to constitute a common-law marriage. Some two or three years after the birth of. Tootie Riley, and in July, 1905, Emma Derrisaw married the defendant Dock Willingham. As a result of this marriage the defendant Julie Willingham was born to Dock Willingham and Emma Derrisaw Willingham on February 11, 1907. During her lifetime there was allotted to Emma Derrisaw Willingham, as her homestead allotment in the Creek Nation, the land involved in this controversy, of which she was seised in fee at the time of her death. She died intestate in November, 1908, leaving surviving her Dock Willingham, her husband, Tootie Riley, her illegitimate child by Thomas Riley, and Julie Willingham, her child by her husband, Dock Willingham. On October 3, 1912, Thomas Riley, Tootie Riley, then a minor, by her guardian, Dock Willingham, for himself, and Julie Willingham, by her guardian, executed an oil and gas mining lease upon the land in controversy, in accordance with the rules and regulations prescribed by the Secretary of the Interior, to oné James A. Chapman, which lease was duly approved by the Secretary of the Interior, and was thereafter, with the approval of the Secretary, assigned by Chapman to the defendant Prairie Oil & Gas Company. Pursuant to this lease, oil wells have been drilled upon the property, resulting in oil production, royalties from which, as provided by the lease, now amounting to over $15,000, have accumulated in the hands of the defendant Dana H. Kelsey, as United States Indian superintendent, Union Agency. The question to be determined is to whom and in what amounts these royalties should be distributed by the Indian superintendent.

When Emma Derrisaw Willingham died in November, 1908, the law of Oklahoma controlled the devolution of her estate (Bartlett v. Okla Oil Co., 218 Fed. 380), and under that law her husband, Dock Willingham, and her children, Tootie Riley and Julie Willingham, would each be entitled to inherit a one-third interest in her real and personal property. Under the act of Congress approved May 27, 1908, the land in controversy, being the homestead allotment of a full-blood Creek Indian, was inalienable during the lifetime of the allottee, Emma Derrisaw Willingham, but by the same act of Congress, it was provided:

"Sec. 9. That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, that if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March 4,.1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April 26, 1931; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April 26, 1931, the land shall then descend to the heirs, according to the laws of descent and distribution of the state of Oklahoma, free from all restrictions: Provided further, that the provisions of section

twenty-three of the act of April twenty-sixth, nineteen hundred and six, as amended by this act, are hereby made applicable to all wills executed under this section."

The allottee having died leaving her child, Julie Willingham, surviving her, born after March 4, 1906, the case falls within the second proviso of the section just quoted; that is, "that if any member of the Five Civilized Tribes shall die leaving issue surviving, born since March 4, 1906, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue during their life or lives, until April 26, 1931." While the general effect of the section, aside from the provisos, is to make the death of any allottee operate to remove all restrictions upon the alienation of his allotted lands, the effect of the second proviso is to make the existence of surviving issue, born after March 4, 1906, operate to extend restrictions upon the alienation of the homestead until April 26, 1931, or until the death of such surviving issue, if that occur prior to the last-mentioned date. In other words, in such case the homestead continues inalienable after the death of the allottee, just as it was before his death. The allottee before his death, owner in fee of the homestead, of course had the right of possession and occupancy of the homestead for his use and support; that is, such use and support as he might derive from it by means other than alienation. At the death of the allottee, intestate, the title to the homestead of course vests in his heirs. But, if there be among them a child or children born after March 4, 1906, then it still remains inalienable pending the term provided for in such contingency, and such child or children by force of the act have the same right of possession and occupancy for their use and support which their ancestor had during his life, to the exclusion of the other heirs, for the term of years extending from the death of the allottee to April 26, 1931, or to the date of the death of such child or children, if that shall happen before the last-mentioned date.

But the use and support which such child or children are permitted to derive from the land is only such use and support as they may derive from it by means other than alienation, for it continues inalienable. The use permitted, therefore, could not have contemplated the leasing of the land by such child or children for oil and gas purposes, because the taking of the oil and gas under the right granted by an oil and gas lease amounts to a disposition of that portion of the very corpus of the property, represented by the oil and gas, and is, to that extent, an alienation of a portion of the land. Eldred v. Okmulgee Loan & Trust Co., 22 Okl. 742, 98 Pac. 929; Moore v. Sawyer (C. C.) 167 Fed. 826. The use contemplated by the act was clearly only its use for agricultural or grazing purposes, or such other use as would not conflict with the provision against alienation of the land. The language of the act is that the land is to remain inalienable for the use and support of such child or children, clearly contemplating that such use and support shall not involve any alienation of the land itself. It is further provided that this restriction against alienation of the land may be removed by the Secretary of the Interior at any time within the term. If this shall

occur, then the heirs may join in a sale of the land immediately upon the removal of such restrictions, and the proceeds of such sale would be divided among the heirs according to their several interests. Such removal of restrictions from the land would terminate the right of children born after March 4, 1906, to the exclusive occupancy of the land for their use and support.

It follows that in this case the execution by Julie Willingham, through her guardian, of the oil and gas lease referred to, was not authorized by virtue of that provision of the law above considered which continued restrictions upon the land for her use and support. But by section 2 of the act it is provided:

"That leases of restricted lands for oil and gas or other mining purposes * * * may be made with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise."

We have seen that under the circumstances of this case the land in controversy continues to be restricted land by reason of the birth of Julie Willingham after March 4, 1906; but the last-quoted provision of the act authorizes the leasing of restricted lands for oil and gas and other mining purposes with the approval of the Secretary of the Interior. Under this provision of the act, notwithstanding the continuation of the restrictions upon the land, the several heirs might join in an oil and gas lease upon the land, with the Secretary's approval. This was done. It has resulted in the development of the property and the discovery of oil by the assignee of the lessee, and the taking of a large amount of oil therefrom, resulting in the royalties mentioned. The money accruing from these royalties under the terms of the lease in effect represents the proceeds of the sale of the oil taken from the land. If the Secretary had removed the restrictions from the land and the heirs had sold it, each of the three heirs would have been entitled to one-third of the proceeds. The taking of the oil under the lease approved by the Secretary effects the sale of that portion of the land represented by the oil, and each of the three heirs is entitled to his one-third share of the proceeds of that sale; that is, one-third of the accumulated royalties. The use and support from the land, as restricted land, to which Julie Willingham is entitled, does not contemplate that she may lease the land for oil and gas purposes; for, as we have seen, that is an alienation inconsistent with restrictions. Therefore the taking of the oil under the lease cannot be said to in any way conflict with the use of the land, which the statute gives her, for her support. Therefore the contention that she is entitled, in addition to her share of the royalties, to interest upon the entire amount of the royalties, cannot be sustained.

Decree may enter herein, ordering and directing the defendants Dana H. Kelsey, as United States Indian superintendent, Union Agency, and W. M. Baker, general disbursing agent, Union Agency, to pay to the defendant Dock Willingham, and to the guardian of the plaintiff Tootie Riley, and to the guardian of the defendant Julie Willingham, each, one-third of the accumulated royalties now in his hands arising from the production of oil and gas from said land, such payments to be made in accordance and compliance with the rules and regulations prescribed by the Secretary of the Interior in such cases.