## BAILEY v. KING *et al.*

No. 5183.   Opinion Filed September 21, 1915.

On Petition for Rehearing, May 9, 1916.

(157 Pac. 763.)

**INDIANS—Lands—Conveyances—Statutory Restrictions.** Act of Congress May 27, 1908. chapter 199, 35 Stat. 312, being an Act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes of Indians, and for other purposes, provides: "That from and after sixty days from the date of this Act the status of the land allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood, including minors, shall be free from, all restrictions." **Held,** that this clause is a complete removal of all restrictions on alienation from all lands of mixed-blood Indians having less than half blood, including minors, formerly provided under certain Indian treaties and acts of congress, and **held,** further, that leases of minors, coming within this clause, do not have to be approved by the court having jurisdiction of their guardianship; nor do such leases have to be recorded to make them valid and binding, under the acts of Congress or treaties, when otherwise made and executed according to law.

(Syllabus by Robberts, C.)

*Error from Superior Court, Grady County;*
*Will Linn, Judge.*

Action by Z. T. Bailey against J. C. King and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*Bond & Melton,* for plaintiff in error.

*F. E. Riddle,* for defendants in error.

Opinion by ROBBERTS, C.   This case comes from the superior court of Grady county, and involves the right of possession of certain land located in that county, belonging to a minor Choctaw Indian of one-eighth quantum blood.   The record shows that, on the 12th day of February, 1912, S. I. Gibbs, as the guardian of said minor Willie George Nail, for valuable consideration, executed a lease to said premises to J. C. King and El D. Taylor, the defendants in error herein.   That said lease was not approved by the county court, where the guardianship of said minor was pending, nor recorded in the office of the register of deeds of said county.

On the 16th day of April, 1912, said guardian leased the same lands to Z. T. Bailey, the plaintiff in error, who immediately caused his lease to be approved by the county court and recorded in the office of the register of deeds of that county.   The facts show that the first lessees, defendants in error, took immediate possession of the premises upon the execution of their lease, and that they were in open and notorious possession of the same at the time of the execution of the second lease, and that the plaintiff in error had full knowledge of said first lease at the time he obtained his lease on said land.   After obtaining his lease, plaintiff demanded possession, and upon refusal

commenced this action in ejectment. The case was tried to the court without a jury, and findings and judgment rendered in favor of the defendants below, who are also defendants in error herein. Motion for new trial was filed and overruled, and plaintiff brings error.

It is admitted by counsel for both parties that the leases involved are on the allotment of Willie George Nail, a Choctaw Indian; that said Nail was a minor of one-eighth quantum Indian blood; and that at the time of the execution of the lease S. I. Gibbs was the legally appointed, qualified, and acting guardian of said minor. It is also conceded by both parties that the lease relied upon by defendants in error was not approved by the county court having jurisdiction of the estate of said minor, and was not recorded within 90 days from the date of the execution of the same. It is also conceded by all parties that the lease relied upon by plaintiff in error was approved by the county court, and recorded within 90 days after its execution and delivery, and that it was taken after the lease relied upon by defendants in error.

For reversal the plaintiff relies upon two assignments of error, as follows:

(1) "The superior court of Grady county erred in finding that the contract set up and relied upon by the defendants did not have to be approved by the county court of Grady county."

(2) "The superior court erred in finding that the contract relied upon by defendants did not have to be recorded in 90 days from the date of the execution of the same."

In support of their contentions counsel for plaintiff in error rely upon the following sections of the acts of Congress:

Section 20 of the Act of April 26, 1906, c. 1876, 34 Stat. 145 (page 103 of Bledsoe's Indian Land Laws), is as follows:

"That after the approval of this act all leases and rental contracts, except leases and rental contracts for not exceeding one year for agricultural purposes for lands other than homesteads, of full-blood allottees of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole Tribes shall be in writing and subject to approval by the Secretary of the Interior and shall be absolutely void and of no effect without such approval; Provided, that allotments of minors and incompetents may be rented or leased under order of the proper court: Provided, further, that all leases entered into for a period of more than one year shall be recorded in conformity to the law applicable to recording instruments now in force in said Indian Territory."

They contend that under this section of the act the allotment of Indian minors can only be leased for a period longer than one year by the proper order of the county court having jurisdiction of the guardianship of said minor.

The Appropriation Act of March 3, 1905, c. 1479, 33 Stat. 1060, provided as follows (page 102, Bledsoe's Indian Land Laws):

"No lease made by an administrator, executor, guardian or curator which has been investigated by and has received the approval of the United States court having jurisdiction of the proceeding shall be subject to suit or proceeding by the Secretary of the Interior or Attorney General: Provided, further, no lease made by an administrator, executor, guardian or curator, shall be valid or enforceable without the approval of the court having jurisdiction of the proceeding."

They also contend that under the above act no lease by administrator, executor, guardian or curator is valid or enforceable, unless the same is approved by the court having jurisdiction of the estate of said minor.

It is provided in the Atoka Agreement (Act Cong. June 28, 1898, c. 517, 30 Stat. 507) :

"No allottee shall lease his allotment, or any portion thereof, for a longer period than five years, and then without the privilege of renewal. Every lease which is not evidenced by writing, setting out specifically the terms thereof, or which is not recorded in the clerk's office of the United States court for the district in which the land is located, within three months after the date of its execution, shall be void, and the purchaser or lessee shall acquire no rights whatever by an entry or holding thereunder. * * * "

It is also provided in section 20 of the act of 1906 (Bledsoe, Indian Land Laws, p. 133) :

"That all leases entered into for a period for more than one year shall be recorded in conformity to the laws applicable to recording instruments now in force in said Indian Territory."

Counsel admit that the laws in force in the State of Oklahoma at the time of the execution of the leases involved in this cause do not provide for the approval of leases made by the guardians of minors, but contend that the acts of Congress relating to leasing Indian minor's lands are in conflict with the state statutes, and that the act of Congress controls.

It may be admitted that these acts of Congress fully sustain the contention of counsel for plaintiff in error upon both propositions, and that under these acts, to complete a valid and binding lease, such as the ones involved herein, it was essential that they be approved by

the county court having jurisdiction of the guardianship proceedings, and that they must be recorded in conformity with the law applicable to recording instruments involving the title to real estate. But these acts of Congress were repealed, at least by implication, long before these leases were executed. The act of May 27, 1908, c. 199, 35 Stat. 312, being "an act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," provides:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on *alienation or incumbrance,* be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions." (Section 1.)

It will be remembered that the Indian minor in this case is of one-eighth quantum Indian blood, and the plain language of this act is that all lands, including homesteads, of allottees enrolled as mixed-blood Indians, having less than one-half Indian blood, including minors, shall be free from *all restrictions.* This language is sweeping, and includes restrictions in regard to the leasing of lands. This court has held that leasing lands is included within the meaning of alienation. *Eldred et al. v. Okmulgee L. & Tr. Co.,* 22 Okla. 742, 98 Pac. 929; *Sharp v. Lancaster,* 23 Okla. 349, 100 Pac. 578.

It appears to us that the authority cited by counsel for defendants in error *(Bettes v. Brewer* [D. C.] 194 Fed. 342) is decisive of this question. The language applicable is as follows:

"The general rule is that except where an order of court is required by statute, a general guardian regularly appointed and qualified may, without order of court, lease the lands of his ward during infancy, if the guardianship so long continues, and may reserve the rents to the ward or to himself. 25 Cyc. 85. By the laws of Oklahoma at the time these leases were made, it was provided (Snyder's Comp. Laws of Oklahoma) :

"'Section 5489: Every guardian appointed under the provisions of this article, whether for a minor or any other person, must pay all just debts due from the ward out of his personal estate and the income from his real estate, if sufficient; if not, then out of his real estate, upon obtaining an order for the sale thereof, and disposing of the same in the manner provided by law for the sale of real estate of decedents.'

"'Sec. 5491. Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as may be necessary, for the comfortable and suitable maintenance and support of the ward, and his family, if there be any; and if the income and profits be insufficient for that purpose, the guardian may sell the real estate, upon obtaining an order of the county court therefor, as provided, and must apply the proceeds of such sale, as far as may be necessary, for the maintenance and support of the ward and his family, if there be any.'

"The sections of the statute above quoted clearly contemplate that the guardian shall so manage the estate of the ward as that it shall be productive of revenue, and one of the necessary incidents of such management is the leasing or renting of such real estate. *This he may do without order of court.* Only in case of a sale of the realty is the order of the court necessary. It was within the authority of the guardian to make the leases under which complainant claims, without order of the court." (Italics ours.)

The above excerpt is a splendid statement of the general rule as well as a construction of our own statutes. However, counsel urge in their brief that under the 1906 act of Congress the lease, being the lease of an Indian minor, would have to be ordered or approved by the court. This phase of the question was also decided by the court in the above opinion, wherein we find the following:

"The defendant contends that the leases under which complainant claims are invalid. If that be true, then he had no standing in court, and we need go no further. I find nothing in the pleadings or proof indicating the degree of Indian blood of the various allottees of the lands in controversy. Nor do I find anything in the record from which it may be determined what portion, if any, of the lands involved are the homesteads of the said minors. All the leases held by the complainant were executed subsequent to the act of Congress approved May 27, 1908. Act May 27, 1908, c. 199, 35 Stat. 312. *By the provisions of that act, if these minor allottees were less than half blood, all their lands were free from restrictions; if* of the half blood or more, and less than three-quarter blood, then all their lands except the homesteads were free from restrictions. There being no showing in the record that these minors are of the class of Indians whose lands are still subject to restrictions, that will not be presumed." (Italics ours.)

It will be noted in the above case the court holds that a lease of the minor allottee's land does not have to be approved by the court under the Oklahoma statute, and if the allottee is less than half blood, even though he be a minor, there are no restrictions whatever upon any of his land. Or, in other words, that the act of May 27, 1908, removed all restrictions upon all lands of allottees of less than half blood, including minors, so far as the various acts of Congress relating thereto are concerned.

In view of the fact that the above decision is by a federal court construing federal statutes, we feel that the same construction must be followed by this court. This brings us to the second contention of plaintiff in error, in which it is claimed that the lease is void because it was not recorded within 90 days from the date of its execution.

To that contention we cannot give our consent. We are clearly of the opinion that the leasing of lands comes within the term "alienation"; the lesser within the greater. The act of Congress (Act Cong. June 28, 1908, c. 517, 30 Stat. 507) requiring leases of Indian allotments to be recorded was distinctly a restriction upon the lands of allottees to that extent, and when the act of May 27, 1908, was passed declaring that all the allotted lands of minors of less than one-half quantum Indian blood shall be free from all restrictions, it swept away every act of Congress that tended in any way to restrict the disposal of these lands, subject only to such exceptions as are included in this act, and the question here presented is clearly not included within the exceptions. That part of the act (of May 27, 1908) applicable here is as follows:

"Section 1. That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half In-

dian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degree of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions wholly or in part under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe.    The Secretary of the Interior shall not be prohibited by this act from continuing to remove restrictions as heretofore, and nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act.   No restriction of alienation shall be construed to prevent the exercise of the right of eminent domain in condemning rights of way for public purposes over allotted lands, and for such purposes sections thirteen to twenty-three inclusive, of an act entitled 'an act to grant the right of way through Oklahoma Territory and the Indian Territory to the Enid and Anadarko Railway Company, and for other purposes,' approved February twenty-eight, nineteen hundred and two (Thirty-Second Statutes at Large, page forty-three), are hereby continued in force in the State of Oklahoma.

"Sec. 2.   That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal:   Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the In-

terior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

In a note under section 72 of Bledsoe on Indian Land Laws, which section includes section 2 of the act of Congress above quoted, Mr. Bledsoe, who is the recognized authority on the subject in hand, says:

"To summarize this section, if the lands are alienable, they can be leased as a matter of course."

In passing upon the same question this court, in *Lewis v. Allen,* 42 Okla. 590, 142 Pac. 387, says:

"Again it is urged that the deed is void because of the provisions of section 16 of the Supplemental Agreement (Act July 1, 1902, c. 1362, 32 Stat. L. 643), which provides that the allottee shall not alienate his land at any time before the expiration of the Choctaw and Chickasaw tribal governments, for less than the appraised value, and that the tribal governments of said tribes were in full force and effect at the time of the second deed (chapter 1876, sec. 28, of Act of Congress of April 26, 1906), and, the $500.00 being less than the appraised value of the land, the deed is on that account void. It is not denied that this provision of section 16 of the Supplemental Agreement of 1902, forbidding the alienation of the land by allottees during the existence of the tribal government for less than the appraised value, was a restriction against alienation. It is contended that this restriction, as well as others, against the alienation of the land allotted to Mrs. Lewis, she being one-eighth Indian blood, was removed by the act of May 27, 1908 (35 Stat. p. 312), section 1 of which reads in part as follows: 'That from and after sixty days from the date of this act the status of the lands

allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads of said allottees, enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood, including minors, shall be free from all restrictions.'

"It was said by the court in *MaHarry v. Eatman*, 29 Okla. 46, 116 Pac. 935: 'If the act of May 27, 1908, was intended by Congress as a substitute for all prior laws on the subjects therein covered, and we believe it was so intended, then its enactment operated as a repeal of all former laws on the same subject, although it contains no expressed words to that effect.'

"We therefore conclude that section 16 of the Supplemental Agreement was no longer applicable to the class of allottees to which Mrs. Lewis belonged, and that all restrictions against the alienation of her land were removed by the act of May 27, 1908. She had a perfect right to alienate her allotment on September 26, 1910, as she did, in making the conveyance of that date to the defendant in error, Chas. R. Allen, and on such terms as she pleased, so long as she was fairly dealt with, as she seems to have been in this instance."

The acts of Congress being disposed of determines the rights of the parties herein. It is admitted by counsel for all parties that there is no law of Oklahoma requiring leases of any kind to be recorded. The plaintiff in error had full knowledge of the claims of defendants under their lease, and knew that it was prior to the lease under which he claims. He also knew that defendants were in possession of the premises at the time he procured his lease from the guardian. The judgment of the lower court was clearly right, and the case should be affirmed.

By the Court: It is so ordered.

## ON PETITION FOR REHEARING.

Opinion by ROBBERTS, C.   In their petition for rehearing, counsel for plaintiff in error contend that, even though the restrictions upon the sale and leasing of the lands involved were entirely removed by the acts of Congress, the lease in controversy was void under the laws of this state, and in support thereof they cite the case of *Duff et al. v. Keaton et al.,* 33 Okla. 92, 124 Pac. 291, 42 L. R. A. (N. S.) 472, wherein Mr. Justice Williams says:

"* * * The rule existing at common law, by which the guardian was authorized to lease the lands of the ward for a number of years without the approval of the probate court, has been changed by section 5513, *supra,* and that by said section said leases in order to be valid must be first approved by the probate court; it being specially provided by said section that the probate court may make such other orders, and give such directions as are needful for the management, investment, and disposition of the estate and effects, as circumstances require."

Without further comment upon that case, it is sufficient to say here that in the trial of this case below counsel for plaintiff, who is also plaintiff in error here, stood squarely upon the treaties and acts of Congress, contending that the restrictions upon such leases had not been removed, but were still maintained in full force.   In their printed brief filed herein, and upon which we fully relied, they said at page 5:

"The laws in force in the State of Oklahoma at the time of the execution of the leases involved in this cause do not provide for the approval of leases made by the guardians of minors, but we contend that if the acts of Congress relating to leasing Indian minor's lands are in

conflict with the state statutes, that the act of Congress controls, and this court has repeatedly so held."

And at page 7 of their brief they say:

"The acts of Congress relating to leases on lands of Indian minors were in full force and effect at the time of the execution of the leases involved in this case"

—and further insist that the defendants' lease is void because of said restrictions. They took their stand and made their fight solely and entirely upon the restrictions contained in the acts of Congress, while counsel for defendants contended that these acts had been repealed and all restrictions removed by the act of May 27, 1908.

It being conceded by counsel for plaintiff in error that "the state law did not provide for nor require the approval of such leases by the county court, nor the recording thereof to make them valid," we gave that theory of the case no further consideration. It will be borne in mind that the rights of the minor Indian are not involved in this case. This is simply a controversy between two lessees—the plaintiff having full knowledge of the defendants' lease, and of their actual possession of the premises, at the time he (plaintiff) procured his lease. Under the circumstances of this case, taking into consideration the position taken, and admissions made by counsel for plaintiff in error as to the state laws, for which they now contend, involving an entire change of position, we do not believe they should now upon rehearing be permitted to gainsay their positive admissions, and assume a new and different theory.

Rule 9 of this court (38 Okla. ix, 137 Pac. ix), among other requirements for petitions for rehearing, provides:

·"Such petition shall state briefly the grounds upon which counsel relies for a rehearing and show either that some question decisive of the case and duly submitted by the counsel has been overlooked by the court, or that the decision is in conflict with an expressed statute or controlling decision to which the attention of the court was not called. * * *"

In the case of *Graham v. Heinrich et al.*, 13 Okla. 107, 74 Pac. 328, the court says:

"After a party has brought an action in the district court alleging a legal and binding contract, and seeking to be relieved from the stipulations thereof upon his part, an answer and cross-petition filed by the defendants praying that the contract be enforced, and trial is had, and specific performance decreed, it is too late after appeal to the Supreme Court for plaintiff, for the first time, to elect to declare the contract invalid, as coming within the statute of frauds."

In *Morrison et al. v. Atkinson et al.*, 16 Okla. 571, 85 Pac. 472, 8 Ann. Cas. 486, it is said:

" 'Where parties consent to try their cause below on a particular theory of what the law of the case is, though it be erroneous, they cannot complain if the result be correct according to that theory.' *Davis v. Jacoby*, 54 Minn. 144, 55 N. W. 908."

And in the same case, at page 575 of 16 Okla., at page 473 of 85 Pac. (8 Ann. Cas. 486), quoting from *Phil. R. Co. v. Howard*, 13 How. 307, 14 L. Ed. 157, it is said:

"We are clearly of opinion that the defendant cannot be heard to say that what was asserted on a former trial was false, even if the assertion was made by mistake. If it was a mistake, of which there is no evidence, it was

one made by defendant, of which he took the benefit, and the plaintiff the loss, and it is too late to correct it."

And again, at page 576 of 16 Okla., at page 473 of 85 Pac. (8 Ann. Cas. 486), quoting from *Railroad Co. v. McCarthy*, 96 U. S. 258, 24 L. Ed. 693, they say:

"Where a party gives a reason for his conduct and decision touching anything involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different considera-tion. He is not permitted thus to amend his hold."

This same rule is laid down and fully approved in the following cases: *Duffy v. Scientific American Comp. Dept.*, 30 Okla. 742, 120 Pac. 1088; *Harris v. First Nat. Bank*, 21 Okla. 189, 95 Pac. 781; *St. L. & S. F. R. Co. v. Key*, 28 Okla. 769, 115 Pac. 875; *Hamilton v. Brown*, 31 Okla. 213, 120 Pac. 950.

In *Wattenbarger v. Hall*, 26 Okla. 815, 110 Pac. 911, the rule laid down in the syllabus is as follows:

"The right of the plaintiff in error to recover was properly submitted, on his theory, to the jury; and, the jury having found against him thereon, he will not be per-mitted to change front in this court, amend his hold, and claim his right to recover on some other theory."

Upon a careful consideration of this case, we are of the opinion that a rehearing should be denied.

By the Court: It is so ordered.