Puerto Rico Drydock & Marine Terminals, Inc., demandante y recurrida, *v.* Secretario de Hacienda de Puerto Rico, demandado y recurrente.

*Número:* 12006          *Resuelto:* 22 de junio de 1962

*J. B. Fernández Badillo, Procurador General y Arturo Estrella, Procurador General Interino,* abogados del recurrente; *Fiddler, González & Rodríguez,* y *María Luisa B. Fuster,* abogados de la recurrida.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

### EN RECONSIDERACIÓN

Mediante la Ley Núm. 77 de 1 de mayo de 1941 (Leyes (1), pág. 671), la Asamblea Legislativa de Puerto Rico autorizó al Gobernador y al entonces Comisionado del Interior para traspasar en venta al Gobierno de Estados Unidos, *"para fines de [la] defensa nacional"*, un dique de carena construido por y propiedad del Estado. Nada se dispuso expresamente en cuanto a la cesión de jurisdicción por el gobierno local a favor del gobierno federal, por lo cual tenemos que referirnos a las disposiciones de ley general sobre la materia, o sea, la sección 5 de la Ley de 16 de febrero de 1903 (Leyes, pág. 112), que lee como sigue: ([1])

"That consent be and is hereby given to the United States to acquire for naval, military or other public purposes, by purchase or condemnation any lands within the island of Porto Rico, and when so acquired and possession thereof shall have been taken by the United States, all jurisdiction over such lands by the People of Porto Rico shall cease and determine; Provided however, that upon the subsequent *alienation* by the United States of any land so acquired the People of Porto Rico shall again have jurisdiction thereover."

Los hechos que dan margen al presente litigio aparecen expuestos en la opinión que aparece publicada en 82 D.P.R. 658 (1961), y pueden resumirse diciendo que la demandante y recurrida Puerto Rico Drydock & Marine Terminals, Inc.,

---

([1]) La sección 5 mencionada fue derogada por el artículo 1 de la Ley Núm. 63 de 10 de junio de 1955 (Leyes, pág. 229). La cesión de jurisdicción sobre terrenos adquiridos por Estados Unidos se reglamentó por la Ley Núm. 62 de la misma fecha, a cuyas disposiciones nos referiremos posteriormente en esta opinión.

como arrendataria del dique de carena, impugna la jurisdicción del Estado Libre Asociado para imponerle contribuciones territoriales en relación con propiedad mueble perteneciente a dicha demandante y recurrida que se encontraba físicamente situada en 1 de enero de 1952 en los terrenos arrendados, o sea, en el dique de carena.

1. En realidad, la controversia en el presente caso se reduce a determinar si por mor del arrendamiento mencionado el Estado Libre Asociado readquirió jurisdicción a los fines de imponer contribuciones a la propiedad mueble localizada dentro del dique arrendado por tratarse de una forma de la "enajenación" a que se refiere la sección 5 de la Ley de 16 de febrero de 1903, supra.  En nuestra opinión original, 82 D.P.R. 658, 672–673, resolvimos que como el término enajenación en su sentido estricto implica un traspaso de dominio, y en su sentido amplio, en el Derecho español, la enajenación tampoco comprende un arrendamiento, el Gobierno de Estados Unidos no había perdido su jurisdicción.(²)  Así es efectivamente si aplicamos exclusivamente a la situación los preceptos del Derecho civil y los correspondientes del Derecho inmobiliario.

Pero a medida que reflexionamos más hondamente nos parece que el problema planteado no encuentra su solución mediante la aplicación exclusiva de dichos preceptos, sino que entran en juego otras consideraciones las que, dentro del proceso de interpretación de la sección específica, y como materia de Derecho local, imponen un resultado distinto. ■

---

(²) Según manifiesta la parte recurrente en su memorándum en apoyo de la moción de reconsideración, ambos litigantes indujeron al tribunal a considerar y resolver el problema de interpretación del concepto "enajenar", a base del texto en castellano de la Ley de 1903.  Es en la moción de reconsideración que se nos llama la atención hacia el hecho de que en el texto inglés de la ley, que es el que debe prevalecer, se usa por enajenación, el término "alienation", y que es a la interpretación de este término que debemos acudir para determinar el alcance de la reserva que hizo el Pueblo de Puerto Rico al ceder jurisdicción exclusiva a los Estados Unidos sobre el dique de carena.

En primer lugar, la Ley de 1903 fue firmada por el entonces Gobernador William H. Hunt en el idioma inglés. El Consejo Ejecutivo, correspondiente al Senado actual, estaba compuesto por seis continentales[3] y cinco puertorriqueños,[4] sec. 18 de la Carta Orgánica de 1900, conocida como Ley Foraker, Vol. 1 L.P.R.A., págs. 22, 34–35, y este Consejo Ejecutivo ejercía funciones legislativas como una de las dos cámaras, secciones 27 y 31 de dicha Carta Orgánica, vol. 1 L.P.R.A., págs. 37 y 38–39. Debemos, por tanto, atenernos al significado de la palabra "alienation" que se tradujo al español como "enajenación", y considerarse éste subordinado al significado de aquél. Véanse, *Pueblo* v. *Charon*, 7 D.P.R. 428 (1904); *Cruz* v. *Domínguez*, 8 D.P.R. 580 (1905); *El Pueblo* v. *Torres*, 9 D.P.R. 440 (1905); *El Pueblo* v. *Agosto*, 10 D.P.R. 449 (1906); *El Pueblo* v. *Acosta*, 11 D.P.R. 249 (1906); *El Pueblo* v. *Santiago*, 16 D.P.R. 469 (1910); *Manrique de Lara* v. *El Registrador*, 23 D.P.R. 864 (1916); *Pueblo* v. *Báez*, 40 D.P.R. 15 (1929); *Pueblo* v. *Noonan*, 46 D.P.R. 724 (1934); *Pueblo* v. *Fonseca*, 62 D.P.R. 433 (1943); *Pueblo* v. *Díaz*, 62 D.P.R. 499 (1943); *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4 (1948); *Pueblo* v. *Zayas*, 72 D.P.R. 18 (1951); cfr. *Seín* v. *González*, 26 D.P.R. 190 (1918); *Venegas* v. *Corte de Distrito de Ponce*, 41 D.P.R. 465 (1930); *De Castro* v. *Junta de Comisionados*, 57 D.P.R. 153 (1940); *Basora* v. *Padilla*, 62 D.P.R. 332 (1943). Aun cuando el término "alienation" supone ordinariamente una transferencia del dominio o gravamen de éste, no siempre prevalece tal resultado, y hay casos americanos—especialmente relacionados con arrenda-

[3] Los miembros continentales del Consejo Ejecutivo eran los señores Charles Hartzell (Secretario Ejecutivo), James S. Harlan (Procurador General), John R. Garrison (Auditor), William F. Willoughby (Tesorero), William H. Elliot (Comisionado del Interior) y Samuel M. Lindsay (Comisionado de Educación).

[4] Los miembros puertorriqueños del Consejo Ejecutivo eran los señores José Celso Barbosa, José Guzmán Benítez, José Gómez Brioso, Rosendo Matienzo Cintrón y Andrés Crosas.

mientos de terrenos de reservas de indios para fines de exploraciones para determinar la existencia de yacimientos de petróleo y gas natural—que admiten que un arrendamiento constituye un "alienation". Véanse, *Eldred* v. *Okmulgee Loan and Trust Co.*, 98 P. 929 (Okla. 1908); *Sharp* v. *Lancaster*, 100 P. 578 (Okla. 1909); *Barnes* v. *Stonebraker*, 113 P. 903 (Okla. 1909); *Duff* v. *Kearton*, 124 P. 291 (Okla. 1912); *Barley* v. *King*, 157 P. 763 (Okla. 1916); *Mailhot* v. *Turner*, 121 N.W. 804 (Mich. 1909); *Williams* v. *Hylan*, 215 N.Y.S. 101 (1926) y 227 N.Y.S. 392 (1928). En su sentido más amplio el término se identifica, pues, con la posesión y control sobre la propiedad. Es innegable que en una relación arrendaticia es el arrendatario quien tiene este control y posesión.

Además, en distintas ocasiones hemos reconocido determinados efectos a la relación entre arrendador y arrendatario que van más allá de las simples obligaciones que engendra un derecho puramente personal o de crédito, e independientemente de que a través de la inscripción haya adquirido determinado carácter de derecho real. Así, para fines de expropiación forzosa, hemos protegido el derecho de un arrendatario, cuyo contrato no constaba inscrito registralmente, a participar en la distribución de la suma consignada como valor justo y razonable de la propiedad expropiada. En *Pueblo* v. *McCormick, Alcaide & Co.*, 78 D.P.R. 940, 946 (1956), nos referimos a que "[e]n tanto en cuanto el arrendamiento *menoscaba* el valor del título de dominio, el arrendatario debe ser compensado de la suma que represente el valor total del título de dominio y no en adición a éste", aun cuando el contrato no estuviera inscrito. Y en *Galiñanes Hnos.* v. *Tribunal Superior*, 77 D.P.R. 881 (1955), al resolver que un arrendatario podía desahuciar a un subarrendatario suyo por necesitar de buena fe el local subarrendado para ampliar su negocio, expresamos a las páginas 886 y 887 que:

"En Derecho Civil, el arrendamiento significa un desprendimiento voluntario de parte del derecho de propiedad. 'El uso o goce de una cosa, es un derecho que radica en ella, que es inherente a ella e inseparable de la misma, *es uno de los varios que integran el dominio,* y pertenece, por tanto, al propietario, quien precisamente por eso, puede disponer de él por título oneroso o lucrativo, por más o menos tiempo, con mayor o menor extensión; es absurdo que si se trasmite el uso o el disfrute de una cosa sin precio, constituya un derecho real de usufructo, de uso o de habitación y no lo constituya si se enajena en otra forma, con otro nombre o mediante el pago de determinada renta; en cualquiera forma que sea, el propietario, al transmitir el uso o el derecho, se desprende de él, lo pierde para sí y lo entrega a otro; si quiere después vender o dar en pago el objeto o cosa con todos los derechos, de que es susceptible, podrá transmitir cuanto no haya transmitido antes, no lo que ya dio, porque es un principio hasta de sentido común que nadie puede dar lo que no tiene, lo que no es suyo, lo que él mismo concedió antes a otro': 10 Manresa 467 a 468 (quinta ed. revisada del Instituto Editorial Reus de 1950).

"En esta glosa Manresa fija dos conceptos que esclarecen bastante el fenómeno jurídico que presenta el arrendamiento: (1) que el arrendamiento es uno de los derechos de disposición *(jus disponendi)* del dominio, y por lo tanto, quien arrienda dispone de parte de su derecho de propiedad a favor de otra persona y (2) que el arrendamiento es por naturaleza un derecho de propiedad transmisible parcialmente de una persona a otra."

Véase también, por vía de confrontación, *Berrocal* v. *Tribunal de Distrito,* 76 D.P.R. 38 (1954).

Finalmente la propia Asamblea Legislativa indicó en forma inequívoca su intención al respecto al aprobar los artículos 3 y 4 de la Ley Núm. 62 de 10 de junio de 1955 (Leyes, págs. 225, 227), que leen como sigue:

"Artículo 3.—La jurisdicción se entenderá cedida bajo la condición expresa de que dentro de los terrenos adquiridos por Estados Unidos podrán llevarse a cabo arrestos, citaciones y emplazamientos que se originen bajo las leyes del Estado Libre Asociado de Puerto Rico. También podrán llevarse a cabo

embargos y otras disposiciones judiciales que determinen los tribunales estaduales con respecto a bienes que radiquen en dichos terrenos, siempre y cuando no se afecten las propiedades de Estados Unidos o el uso o beneficio que derive Estados Unidos de dichos bienes o los fines para los cuales se adquirieron los terrenos.

"Artículo 4.—La jurisdicción concedida continuará solamente mientras Estados Unidos sea el propietario o esté en la posesión de los terrenos y éstos sean usados para los fines navales o militares u otros fines públicos para los cuales fueron adquiridos. *En caso de que Estados Unidos dejare de ser propietario de los terrenos o de estar en posesión de los mismos, o en caso de que no fuesen usados para los fines para los cuales fueron adquiridos,* el Estado Libre Asociado de Puerto Rico volverá a tener jurisdicción sobre los mismos." ▆

Se observará que el criterio determinante de la jurisdicción es la propiedad o *posesión* por Estados Unidos de los terrenos cedidos y la continuación del uso de los mismos para fines navales o militares y otros fines públicos a los cuales haya respondido su adquisición. A nuestro juicio, se trata aquí de una ley interpretativa, [5] vigente desde la misma fecha de la ley interpretada por ella. Véanse, en cuanto a la explicación de este principio de hermenéutica, la opinión disidente emitida por el Juez Asociado señor Belaval en *Ginés* v. *Ayala Rodríguez*, 84 D.P.R. 248 (1961), y especialmente las referencias a la glosa del tratadista Puig Peña sobre el particular que aparece en el volumen I del tomo I de su *Tratado de Derecho Civil Español*, págs. 440–441. Abona nuestro criterio no sólo la contemporaneidad de la aprobación de la ley con la fecha de la sentencia dictada en el presente caso, a lo cual nos referimos

---

[5] La sentencia en el caso de autos se dictó en 5 de mayo de 1955; el proyecto del Senado 626 que luego se convirtió en la Ley Núm. 62 de 1955 se presentó en 10 de marzo de 1955 y la ley fue finalmente aprobada en 10 de junio siguiente. Para el historial legislativo de esta medida, véase el Diario de Sesiones de 1955, págs. 2122 y 2123 (Informes de la Comisión de lo Jurídico Civil).

en el escolio (5), sino también que la ley por la cual se autorizó a ceder el dique de carena expresamente se refirió a que su adquisición por Estados Unidos respondía a "fines de la defensa nacional", y que, por tanto, la cesión de jurisdicción puede entenderse condicionada mientras se cumple ese propósito únicamente. No podemos ignorar que la cesión de jurisdicción no puede divorciarse del fin para el cual ésta se realiza, pues conocidos son otros casos en que a pesar de haberse transferido propiedad al gobierno federal, hemos conservado jurisdicción localmente para ciertos fines. Cfr. *López* v. *Corte*, 58 D.P.R. 115 (1941); *Pueblo* v. *Suárez*, 51 D.P.R. 903 (1937). En cuanto a la imposición de contribuciones se refiere, no puede admitirse la inmunidad contributiva a menos de que se trate de propiedad federal, pues no comprendemos cómo pueda justificarse la extensión de la misma a una tercera persona que no tiene relación inmediata con el gobierno en la explotación particular del dique de carena.

2. En cuanto se refiere a la Ley de Arrendamientos Militares, ratificamos expresamente lo expuesto en nuestra opinión original. Los nuevos planteamientos del Secretario de Hacienda no justifican que alteremos el resultado a que allí llegamos. Véase, Keesling, *Property Taxation of Leases and Other Limited Interests*, 47 Cal. L. Rev. 470, 487 (1959).

*Se declarará con lugar la moción de reconsideración y, en su consecuencia, se revocará la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 5 de mayo de 1955.*

Los Jueces Asociados señores Pérez Pimentel y Rigau concurren en el resultado. El Juez Asociado señor Santana Becerra no intervino.