FLEMING v. FLEMING.

1. HOMESTEADS — ALIENATION — HUSBAND AND WIFE — CONSTITUTIONAL LAW.

An oral contract by a husband and wife agreeing to give a son one-half of their farm, which was also their homestead, in consideration of his moving upon the farm, working it, and caring for them until their death, was void, not being in writing and signed by the wife as required by section 2, Art. 14, Const.

2. SAME—CONTRACTS—WILLS.

A will executed by the husband and wife to carry out. the terms of said oral contract was not such an instrument as complies with the constitutional requirement, it being ambulatory, and not partaking of the essentials of a contract, and being revocable at will.

3. SAME—CONTRACTS—PART PERFORMANCE—EQUITY.

Where the contract was void and unenforceable because relating to a homestead, but the son had for 11 years performed his part of the contract, making permanent improvements, the court of equity will decree the margin above the homestead exemption to be subject to a lien for the value of his services together with any money or

property he may have furnished, less the amount he may have received; the necessary farm tools bought to run the farm to belong equally to the parties, and to be paid for equally by them.

4. SAME—ACCOUNTING.

> *Held*, an accounting under defendant's cross-bill not justified by the testimony.

Appeal from Barry; Smith, J. Submitted June 6, 1918. (Docket No. 50.) ' Decided July 19, 1918.

Bill by Fred Fleming and another against John Fleming to enjoin an action of ejectment and for the specific performance of a land contract. From a decree for plaintiffs, defendant appeals. Reversed, and remanded.

*Thomas Sullivan* and *Colgrove & Potter*, for plaintiffs.

*John M. Gould* (*Elmer N. Peters*, of counsel), for defendant.

FELLOWS, J. As is quite common when cases of this character, involving family troubles, are submitted to courts for determination, a want of harmony appears in the testimony as well as in the relations of the parties. We do not find it necessary to state all the conflicting claims of the parties, but prefer to state the controlling facts which we find established on this record. In reaching our conclusions we are aided by. the findings of the trial judge, who heard and saw the witnesses and was well able to judge their credibility.

John Fleming, the defendant, and Arista his wife, were old residents of Carlton township in Barry county. They had three children: Charles, Fred, one of the plaintiffs, and Minnie. Charles married; he seems to have remained at home. Fred was a carpenter by trade; he married the plaintiff, Bertha, and

after remaining a short time with his parents established a home of his own. Minnie, the remaining child, married a man named Vester. For a time Mr. Vester worked the Fleming farm; at the time of the hearing he lived in Hastings. Defendant owned 135 acres of land in Carlton township. For a time he engaged in mercantile pursuits but the venture was not successful. He deeded to Charles 55 acres of his farm land and took back a mortgage for $1,000, which seems to have been used to settle with his creditors. This conveyance to Charles, with the mortgage back, appears to have been regarded by all the family as giving to Charles his prospective share of his father's estate. At about the time of this conveyance to Charles defendant placed the title to the remaining 80 acres in himself and Arista, as tenants by the entirety.

Charles died in 1904, leaving a widow and two children who lived with defendant and his wife until the re-marriage of the widow in 1912. Charles' widow did nursing, and it is fairly to be inferred from the testimony that from her earnings and the proceeds of the 55 acres she furnished her share to the satisfaction of the old people. Soon after Charles' death the mother began importuning plaintiff, Fred, to move upon and work the home farm. We are satisfied that she was the active one in negotiating with Fred, but that all she did had the sanction and approval of defendant. She impressed on Fred that he was the only son left and that it was his duty to come with them in their declining years. He at that time was following his trade, doing other work, and maintaining his home not far from the old home, and her visits were frequent and her importunities insistent. Mr. Vester worked the farm for the first year after Charles' death. We are satisfied that the trial court correctly found that as an ultimate result of these negotiations, covering

about a year's time, the parties agreed as contended by plaintiff, that he should give up his own home, move upon the old homestead, work it during the remainder of their lives, that both families should be cared for on the farm, the taxes and interest on a mortgage of a thousand dollars outstanding should be paid, and the balance, if any, was to be divided equally; and that upon the death of the parents Fred was to have one-half of the farm and the other half was to go to the daughter, Mrs. Vester. Defendant under the arrangement was to have a garden patch and was not required to do any work on the farm, unless he desired. We are further satisfied that it was originally agreed that defendant was to furnish the necessary teams and tools, but that it was later agreed that such new tools as it might be necessary to purchase should be paid for out of the proceeds of the farm.

Pursuant to this arrangement the plaintiffs gave up their home and Fred his trade, and in the spring of 1905 they moved upon the place. The father and mother, with Charles' widow and children, occupied one part of the house and plaintiffs' family the other, until after the death of Arista in the fall of 1912, and the marriage of Charles' widow. After the death of the mother, defendant lived with the family of the plaintiff. During the lifetime of Arista she and her husband executed a joint will giving Fred one-half their property and the daughter, Minnie, the other half. We are satisfied that during all these years plaintiff fully carried out his contract. There was an occasional unpleasantness, such as might be expected. Defendant seems to possess some temper, and of late has on occasion failed to successfully curb it.

In February, 1916, defendant asked plaintiffs to fix up some things for him as he was going to Hastings to stay with his daughter, Mrs. Vester, for three weeks and take treatment with a Hastings doctor. After he

had been at his daughter's a short time he caused a notice to quit the premises to be served on plaintiffs. Negotiations between the parties proved fruitless, and this bill praying for the specific performance of the contract was filed. From a decree for such specific performance, and fixing the rights of the parties in the future defendant appeals.

The decree entered in the court below afforded an equitable solution of this unfortunate family trouble. But for insuperable legal objections we would be inclined to affirm it. The premises in question, however, were, at the time of the making of the contract, the home of defendant and his wife; they continued such home during the succeeding years of her life. The constitutional homestead had never been admeasured and the contract was for an undivided one-half of the whole farm, including the homestead. In section 2, article 14, of the Constitution of the State, is found the following provision with reference to the homestead:

"But such mortgage or other alienation of such land by the owner thereof, if a married man, shall not be valid without the signature of his wife to the same."

The contract in the instant case, a verbal one, was in effect a contract for the conveyance of land including the homestead of the vendors; the payment was to be made in a certain way. To square with the constitutional provision a contract to convey the homestead must be in writing and signed by both husband and wife. Our authorities are numerous on this subject. The early case of *Ring* v. *Burt*, 17 Mich. 465, is quite in point. In that case one Ira Ring, husband of complainant, made a verbal agreement with defendant Daniel Burt, whereby the defendant agreed to move upon the premises, which were the homestead and which were worth slightly in excess of the amount of the exemption, and was to care for the old people the

balance of their lives and have the property. Burt went upon the premises and performed his part of the contract with the knowledge and consent of the wife, and with her knowledge the husband delivered a deed to the daughter of Burt; which deed, however, she did not sign. It was held that the deed was void. We quote from the *syllabus:*

"A widow is not bound by a verbal contract, made by her husband, in his life time, by which his homestead was to be conveyed to a third person, in consideration of the support of himself and wife during their life time. And this is so, even though she assented to the contract, and the husband gave a deed in accordance with it, but which was not executed by her."

A contract, without the wife's signature, to convey a homestead is not voidable merely but is wholly void. *Phillips* v. *Stauch,* 20 Mich. 369; *Hall* v. *Loomis,* 63 Mich. 709. See, also, *Webster* v. *Warner,* 119 Mich. 461; *Lott* v. *Lott,* 146 Mich. 580; *Klett* v. *Klett,* 175 Mich. 224. The equities in the instant case are strongly with the plaintiffs; strong equities have existed in many of the cases cited. But strong equities cannot break down the constitutional barriers placed around the homestead.

The will executed by the defendant and his wife was not such an instrument as complies with the constitutional requirement under consideration. *Grindling* v. *Rehyl,* 149 Mich. 641; *Gould* v. *Mansfield,* 103 Mass. 408. It is ambulatory, and did not partake of the essentials of a contract, and was revocable at will.

While the plaintiffs are not entitled to a decree for specific performance of this void contract, they are not without remedy, and their rights may be protected in this proceeding. *Klett* v. *Klett, supra.* Upwards of 11 years of their lives had been given before the filing of this bill to the faithful performance of a contract which they expected and had a right to ex-

pect would be equally faithfully carried out by this defendant. During that time permanent improvements have been made by plaintiff Fred on the premises in question. Since the death of defendant's wife they have cared for him in their own home in the good faith expectation that one-half of the home farm would be theirs at his death. They must not be turned from a court of equity empty handed. That they have performed services for the defendant of greater value than they have received this record discloses, but how much greater in dollars and cents we cannot determine from the testimony before us. The farm consists of 80 acres; the record discloses it to be worth $6,000; there is a margin above the exemption of $4,500. The practice adopted in *Klett* v. *Klett, supra,* will be here followed. Defendant may, within 30 days, elect his exemption. If the parties do not agree upon the amount of land to go with the buildings it may be admeasured by commissioners to be appointed by the court. The plaintiffs will be allowed the value of the services they have performed, together with any money or property furnished from the date of the contract to the date of the decree, less the amount they have received. The necessary new tools bought to run the farm belong equally to the parties, and should be paid for equally by them. There is some testimony in the record from which it might be inferred that unnecessary tools have been put on the place. The trial judge will determine this question and adjust the amount on the basis of necessary farm implements and no others. When the amount due the plaintiff shall be determined by the court below a decree shall be there entered, fixing the same as a lien upon the premises outside the homestead and directing a sale conformable as near as may be to mortgage foreclosure sales. In the meantime defendant will be enjoined from incumbering or selling said premises.

Defendant, by way of cross-bill in his answer, asked for an accounting. There is no testimony justifying an accounting in his favor, and his cross-bill will be dismissed. He holds the note of plaintiff Fred; the amount due on this note may be off-set against plaintiff's claim.

The decree of the court below will be reversed and the case remanded for proceedings not inconsistent with this opinion. Defendant will recover costs of this court.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.