## DYKSTERHOUSE *v.* OHL.

1. APPEAL AND ERROR—SPECIFIC PERFORMANCE—OPTION TO PUR-
CHASE REALTY—IMPROVEMENTS—PAYMENTS.

  Plaintiff in suit for specific performance of alleged option to purchase real estate contained in a lease *held,* to have been the controlling factor in the successive managements and ownerships of the lessée interest notwithstanding such ownerships were partnerships or·corporations at various times; hence, payments of rent and for improvements made by such firms were in fact by plaintiff.

2. SAME—NOTICE OF OPTION—FINDING OF COURT—EVIDENCE.

  Finding that defendant purchaser of premises did not purchase without notice or knowledge of plaintiff's option to purchase the premises is affirmed on record presented in suit for specific performance and accounting under alleged option to purchase.

3. SPECIFIC PERFORMANCE—OPTION—SALE TO THIRD PARTY—VAGUE-
NESS AND UNCERTAINTY.

  Specific performance will not be granted against optionor, where he has sold the property to a third party and the terms of the instrument containing the option are too vague and uncertain.

4. LIENS—EQUITY—SPECIFIC PERFORMANCE—IMPROVEMENTS—EN-
HANCEMENT OF VALUE—COVERAGE OF LIEN.

  An equitable lien in favor of plaintiff, optionée-lessee, under instrument under which he was not entitled to specific per-

---

REFERENCES FOR POINTS IN HEADNOTES

[1–4] Generally as to options to purchase, see 12 Am Jur, Contracts, §§ 27, 37, 45; 55 Am Jur, Vendor and Purchaser, § 27 *et seq.* Generally as to options to purchase contained in leases, see 32 Am Jur, Landlord and Tenant, § 299 *et seq.*

[3] Generally as to necessity of definiteness in contracts, see 12 Am Jur, Contracts, § 64 *et seq.*

[4] 32 Am Jur, Landlord and Tenant, §§ 715, 731; 49 Am Jur, Specific Performance, § 175.

formance, was proper, where testimony supported finding that improvements had cost at least the amount of the lien and that it enhanced the value of the premises by such amount upon that part on which the lien was imposed, which included a right of access to the part used for industrial purposes.

Appeal from Kent; Verdier (Leonard D.), J. Submitted January 5, 1951. (Docket No. 58, Calendar No. 44,689.) Decided June 4, 1951.

Bill by Robert M. Dyksterhouse against Frank Ohl and others for specific performance of agreement for sale of real estate. Decree for plaintiff. Defendants Ohl appeal. Defendant Cencast Engineering Corporation cross-appeals. Affirmed.

*Uhl, Bryant, Slawson & Wheeler,* for plaintiff.

*Samuel H. Himelstein,* for defendant Frieda Ohl.

*Harrington, Waer, Cary & Servaas,* for defendant Cencast Engineering Corporation.

REID, C. J. The bill was filed (1) for specific performance of an agreement for conveyance of real estate; (2) for an accounting; and (3) for an injunction against resale of the premises involved. From a decree establishing a lien for $5,100 for plaintiff against the interest of defendants Ohl, the surviving defendant Frieda Ohl appealed.

Since the hearing in the trial court, defendant. Frank Ohl deceased and the defense is carried on by his surviving wife, Frieda Ohl, as survivor tenant by the entireties. Defendant Cencast Engineering Corporation also appealed, sought an adjudication that Cencast purchased without notice of plaintiff's rights, and seeks in effect to have its purchaser's interest declared unencumbered by lien for plaintiff.

Defendant Frank Ohl bought the property, part of which is involved in this case, in 1900. The description of the entire tract is, "the south ½ of lot 11, Leonard & Company's addition to the city of Grand Rapids." It has 50 feet of frontage on Front avenue and a depth of about 292.5 feet; the back end being on Grand river. Ohl's first wife died in 1938 and he married defendant Frieda in 1941. The title to the property stood in the name of Frank Ohl when the memorandum of agreement involved in this case as exhibit No 1 was signed October 15, 1944, after which date the title to said property was placed in the names of defendants Frank Ohl and Frieda Ohl, his wife, as tenants by the entireties. Frank Ohl built his dwelling house on the Front avenue end of the property in 1901 and he lived in that house until his death.

Frank Ohl built (besides his residence) a concrete factory building about 122 feet long (near or on the north line of the property), the east end of the concrete factory building being about 72 feet from the river, and 105.2 feet on the south side and 40 feet in width. He also built a one-story frame building about 72 feet long and 21 feet wide (between the factory building and the river) divided into several garages.

Plaintiff claims that through the nominal instrumentality of his company, Fisher Machine Products Company (control of Fisher Company being in plaintiff), he (plaintiff) built what defendant Ohl calls "an extension," but which seems to have been a reconstruction 30 feet on the rear or east side of the factory building. Defendant Ohl claims the extension was built by the Fisher company on its own account and that consequently plaintiff has no right to sue for a lien in his favor for moneys expended by Fisher company.

In April or May, 1944, plaintiff met defendant
Frank Ohl, at the latter's residence, and an oral lease
was arranged for on a basis of $60 per month and
(according to the trial court's finding) plaintiff had
also Frank Ohl's agreement to give plaintiff an op-
tion covering the building to buy it for $10,000 at any
time he wanted to. The agreement as to an oral op-
tion is disputed by defendants Ohls. Beginning in
April or May, 1944, plaintiff began putting up per-
manent buildings on the property and such construc-
tion was not completed until after the lease with
option was signed, October 15, 1944, which· lease is
as follows:

"MEMORANDUM OF AGREEMENT entered into this
15th day of October, A. D. 1944, by and between
Frank Ohl and Frieda Ohl, parties of the first part,
and Robert M. Dyksterhouse, party of the second
part,

"WHEREAS, said parties of the first part are now
renting premises located at 1340 Front Avenue, N.
W., Grand Rapids, Michigan, to said party of the
second part; said premises including buildings and
portions of garage on premises but not including a
dwelling house on said premises, and

"WHEREAS, said party of the second part is desir-
ous of making certain additions for the betterment
of said premises,

"Now THEREFORE, IT IS MUTUALLY AGREED AS
FOLLOWS:

"(1) Party of the second part is hereby granted
permission to make various additions and improve-
ments to said property, provided that said improve-
ments and additions shall enhance the value of the
property and shall not detract from same.

"(2) Parties of the first party (*sic*), in considera-
tion of the rentals to be paid and the covenants to be
performed by the said second party, do hereby LET
and LEASE to said second party for the term of 5
years from and after the 15th day of October, 1944,
on the terms and conditions hereafter mentioned,

to be occupied as a factory and other uses incidental thereto, all that certain piece or parcel of land situate in the city of Grand Rapids, in the county of Kent and State of Michigan, described as follows: *viz:*

"Buildings and garages now in use but not including dwelling house located on the following real estate:

"South one-half of lot 11, Leonard & Company's Addition to the City of Grand Rapids, Kent county, Michigan, according to the recorded plat thereof.

"(3) Said second party, in consideration of the covenants herein made by said first parties, does promise to pay to said first parties for rental of said premises, the sum of $60 on the 15th day of October, 1944, and the sum of $60 each month thereafter during the life of this lease.

"(4) In part consideration hereof, said first parties agree to withdraw said premises from market and sale during the term of this lease, and at its expiration or at any time prior thereto, if second party shall then elect to purchase said premises, and shall give first parties written notice of such election previous to such expiration, first parties will thereupon sell second party said premises, including all buildings, improvements, and fixtures now located on the south one-half of lot 11, Leonard & Company's Addition to the city of Grand Rapids, Kent county, Michigan, for the sum of $10,000 cash; it is further agreed that the option to purchase the premises for the sum of $10,000 shall remain irrespective of the value of any additions or improvements which said second party may make to said premises.

"IN WITNESS WHEREOF, the said parties have hereunto set their hands and seals the day and year first above written.

| | |
|---|---|
| "FRANK OHL, | (L.S.) |
| "FRIEDA OHL, | (L.S.) |
| "ROBERT M. DYKSTERHOUSE. | (L.S.)" |

The signatures were witnessed by 2 witnesses and acknowledged.

Plaintiff testified that the war was on and he was pressed for time, which may explain the inextricable confusion as to the lease, the poor attention paid to reducing the lease and option to writing and, as well, the apparent confusion or, at least, very rapid changes as to management and ownership of the business carried on by plaintiff on the premises. In her brief, defendant Frieda Ohl characterizes the changes in Dyksterhouse's business management as follows:

"Shortly after * * * [Dyksterhouse] moved in, the Fisher Machine Co. (also called Fisher Machine Products Co.) was organized and that company paid the rent. The partners and the interests in the Fisher Machine Co. varied. First composed of Dyksterhouse, owning 75% interest, Leedy, 20%, and a Mr. Mallock, owning 5%, it changed and it became 4 people, with Dyksterhouse owning 51%, Dyksterhouse's father owning 22%, Leedy 22% and Mr. Mallock 5%. In April or May of 1944, there were 2 partners, Mr. Mallock and Mr. Dyksterhouse, and later Leedy came in. At the time Dyksterhouse moved in it was Dyksterhouse alone, and then he took in Mr. Mallock. In July or August, it became 4. Dyksterhouse was not sure of exact dates. On October 15, 1944, which is the date of exhibit 1, the Fisher Machine Co. was in possession, and the partnership paid the rent. In July of 1945 or 1946 * * * the partnership filed articles of dissolution and went out of existence, and the Lamont Brass Corp. became the tenant, but the Lamont Brass Corp. was also dissolved and liquidated just about the time suit was instituted."

The record seems to bear out such statement in defendant Ohl's brief.

We conclude further from the whole record that plaintiff Dyksterhouse was the controlling factor in

the successive managements and ownerships and that the payments for the improvements to the property during plaintiff's lease were in fact by plaintiff, though the checks of Fisher Machine Products Company (and later by Lamont Brass Corporation) were in form the direct means of paying for construction costs involved.

On May 13, 1947, defendant Cencast Engineering Corporation offered to buy, "Factory Bldg. and garages E. 190′ of S. half of lot 11 and E. 125′ of North half of lot 12 Leonard and Co's Ad. to the city of Grand Rapids," for $15,800, with other matters in the written offer as to terms, which offer was the same day accepted by Frank and Frieda Ohls.

Mr. Roberts, the officer and agent of Cencast company, testified that he discussed with Ohl on May 12th, the day before the offer was made, as to possession being immediately deliverable and was assured that the tenant was Mr. Leedy (brother-in-law of plaintiff) who was in possession on a lease from month to month, that Leedy had expressed to him (Ohl) his desire for a smaller building and that the rent was past due. Witness Roberts told Leedy of his pending purchase for Cencast and Leedy suggested he, Leedy, would need time to liquidate his business in the premises.

The trial court found that Cencast did not purchase without notice or knowledge of plaintiff's option to purchase. In view of all the testimony, we affirm such finding of the trial court. On learning of the sale agreement with Cencast, plaintiff removed the personal property standing in the name of Lamont Brass company, removed some fixtures and sold to Cencast the remaining fixtures, and moved out without the formality of process being served on him or Lamont company requiring that he or they move out of the premises.

The lease-option (exhibit No 1) is too vague and uncertain in its terms for specific performance.

Defendant Ohl by his sale to Cencast made it impossible for Ohl to tender to plaintiff the alternative of deeding the real estate to plaintiff and payment by plaintiff to Ohl of the value of the real estate.

Defendant Ohl's objection that the decree is merely an award which should have been determined on the law side of the court by a jury, is without merit.

Equity has jurisdiction to declare and establish a lien on real estate and determine the amount of it, under the circumstances of this case.

While the case of *Rzeppa.* v. *Seymour,* 230 Mich 439, is not precisely parallel with the instant case, still it is of interest to note that decision, in which we say at page 443:

"The harsh rule of the common law, denying relief to one who builds on another's land, has been modified in actions of ejectment, by statute (CL 1915, § 13211), to the extent of permitting recovery for improvements made in good faith under color of title or where possession has been held for 6 years or more, but this is not an action of ejectment, neither was defendant Rhodes claiming under color of title, nor was he in possession 6 years. Equity, when possessed of jurisdiction over the subject here involved, follows the more equitable rule of the civil law, and permits the owner of the land to elect whether to pay the value added to the land by the building, or take the value of the land, but not to refuse all relief. See 19 CJ, p 1247. The cost of the building, however, does not measure the value added to the land. Neither may the value added by the building exceed the cost thereof."

In the case of *Fleming* v. *Fleming,* 202 Mich 615, we say at page 620:

"While the plaintiffs are not entitled to a decree for specific performance of this void contract [void because covering homestead], they are not without

remedy, and their rights may be protected in this proceeding."

Further, on page 621:

"When the amount due the plaintiff shall be determined by the court below a decree shall be there entered, fixing the same as a lien upon the premises outside the homestead and directing a sale conformable as near as may be to mortgage foreclosure sales."

The bill in the instant case sought specific permance but the court found itself not justified in awarding that high remedy. The defendants Ohl were living on the same lot but made no suggestion or protest against plaintiffs erecting the building which Ohls must be considered as acquiescing in being built on the strength of an oral option to purchase. The court was correct in holding that equity should at least award a lien for the enhancement in value of the property.

The court awarded to plaintiff $5,100 as the amount of the net enhancement in value of the premises and made that the amount of lien against part of the hereinbefore described real property of defendant Ohl used for industrial purposes and also against amounts due from Cencast.

Defendant Cencast did not purchase without notice.

The testimony fairly supports the finding of the trial court. We concur in the award, and the establishment of the lien. We consider that not too much of the lot is included under the lien, the right of access being considered as a necessary item.

The decree appealed from is affirmed. Costs to plaintiff against defendants Ohl and Cencast.

BOYLES, NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.